# IN THE SUPREME COURT OF CALIFORNIA

In re ANTHONY MAURICE COOK, JR.,

on Habeas Corpus.

S240153

Fourth Appellate District, Division Three
G050907

San Bernardino County Superior Court
WHCSS1400290

---

June 3, 2019

Justice Corrigan authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, and Groban concurred.

Justice Kruger filed a concurring and dissenting opinion.

---

In re COOK

S240153


Opinion of the Court by Corrigan, J.


In *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), the defendant committed a murder at age 16, was tried as an adult and given a sentence of 50 years to life. He challenged the sentence as a violation of the Eighth Amendment ban on cruel and unusual punishment. While his appeal was pending, the Legislature enacted Penal Code[1] sections 3051 and 4801 to provide a parole hearing during the 25th year of incarceration for certain juveniles sentenced as adults. Because Franklin was eligible for such a hearing, we held that his Eighth Amendment challenge was rendered moot, and affirmed his sentence. (*Franklin*, at pp. 280, 286.) We also held that sections 3051 and 4801 contemplated "that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate" consideration by the Board of Parole Hearings (Board). (*Franklin*, at p. 283.) Because assembling such information was "typically a task more easily done at or near the time of the juvenile's offense" (*ibid.*), we remanded the case to the trial court to give Franklin a chance to "put on the record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing" (*id.* at p. 284). We authorized the trial court to receive "any documents,

_____

[1]     All further undesignated statutory references are to the Penal Code.

evaluations, or testimony (subject to cross-examination) that may be relevant at [Franklin's] eventual youth offender parole hearing." (*Ibid.*)

*Franklin* involved a direct appeal.  The question here is whether a sentenced prisoner whose conviction is final can seek the remedy of evidence preservation and, if so, by what means. We conclude that offenders with final convictions may file a motion in the trial court for that purpose, under the authority of section 1203.01.  That statute provides that, postjudgment, the trial court may generate, collect, and transmit information about the defendant and the crime to the Department of Corrections and Rehabilitation.    The statute specifically mentions statements prepared by the court, prosecutor, defense counsel, and investigating law enforcement agency.  But the court has inherent authority under Code of Civil Procedure section 187 to authorize additional evidence preservation consistent with our holding in *Franklin*.  Because section 1203.01 provides an adequate remedy at law to preserve evidence of youth-related factors, resort to a petition for writ of habeas corpus is unnecessary, at least in the first instance.

## I. BACKGROUND

In 2007, Anthony Cook, Jr., was convicted of two counts of first degree murder and one count of premeditated attempted murder, with findings that he personally and intentionally discharged a firearm, causing great bodily injury or death.[2] Cook was 17 years old when he committed the offenses.  He was sentenced to life with the possibility of parole for the attempted

---

[2]     Sections 187, subdivision (a), 664, 12022.53, subdivision (d).

2

murder, and five consecutive terms of 25 years to life for the murders and enhancements. The judgment was affirmed on appeal.

In 2014, Cook filed a petition for writ of habeas corpus challenging his sentence as cruel and unusual punishment under the Eighth Amendment and *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*). The Court of Appeal held that Cook's sentence was constitutional because newly enacted sections 3051 and 4801 entitled him to a parole hearing during his 25th year of incarceration. Accordingly, it denied the writ, and Cook petitioned for review.

While Cook's petition was pending, we decided *Franklin*, *supra*, 63 Cal.4th 261. Thereafter, we granted Cook's petition for review and transferred the case to the Court of Appeal with directions to vacate its decision and consider whether, in light of *Franklin*, Cook was "entitled to make a record before the superior court of 'mitigating evidence tied to his youth.' " (*In re Cook*, S234512, Supreme Ct. Mins., July 13, 2016.)

On remand, the Court of Appeal held that Cook was entitled to such a proceeding. (*In re Cook* (2017) 7 Cal.App.5th 393, 398–399, review granted Apr. 12, 2017, S240153.) The court rejected the Attorney General's argument that habeas corpus relief was not available because *Franklin*'s remand procedure was not based on an underlying illegality or unlawful restraint as would be necessary to exercise habeas jurisdiction. (*Id*. at pp. 399–400.) It reasoned: "A previously convicted defendant may obtain relief by habeas corpus when changes in case law expanding a defendant's rights are given retroactive effect." (*Id*. at p. 399.) Accordingly, the court held that "the deprivation of the rights granted by *Franklin* is cognizable on habeas corpus" and that the "appropriate remedy . . . is to

remand the matter to the trial court with directions to conduct a hearing at which [Cook] will have the opportunity to make such a record." (*Id.* at p. 400.)

We granted the Attorney General's petition for review, and reverse the judgment of the Court of Appeal.

## II. DISCUSSION

### A. *Scope of* Franklin*'s Holding*

Whether juvenile offenders with final convictions are entitled to a *Franklin* evidence preservation proceeding turns on the scope of *Franklin*'s holding. The Attorney General would have us limit entitlement to defendants sentenced after *Franklin* and to cases pending on direct appeal when *Franklin* was decided. He points out that *Franklin* did not find an illegality in the juvenile's sentence. Instead, the remand procedure was based on a statutory change in the law providing for juvenile parole hearings. The Attorney General cites the presumption that, in the face of legislative silence, an amended statute applies only to defendants whose judgments are not yet final. (Citing *People v. Brown* (2012) 54 Cal.4th 314, 323; *In re Estrada* (1965) 63 Cal.2d 740, 744–748.) He urges the authority for the remand in *Franklin* logically derived from (1) the procedural mechanisms available to the trial court to compile a relevant record at the sentencing stage of an open criminal action (§ 1204; Cal. Rules of Court, rule 4.437; see *Franklin, supra,* 63 Cal.4th at p. 284); (2) this court's inherent supervisory authority over criminal trial procedure (see *Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 825 (*Tide Water*)); and (3) our authority on direct appeal to remand a criminal case "to the trial court for such further proceedings as may be just under the circumstances" (§ 1260). The Attorney

General maintains that neither a trial nor reviewing court can authorize a proceeding of the scope contemplated in *Franklin* once the appeal has concluded and the conviction is final.

It is true that *Franklin* did not declare the juvenile's sentence unlawful. (*Franklin*, *supra*, 63 Cal.4th at pp. 278–281, 284.) Rather, we concluded that "[s]ection 3051 . . . effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years." (*Id*. at p. 281.) "[T]he combined operation of section 3051, section 3046, subdivision (c), and section 4801 means that Franklin is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither [life without parole] nor its functional equivalent." (*Id*. at pp. 279–280.) Accordingly, Franklin was "not subject to a sentence that presumes his incorrigibility; by operation of law, he is entitled to a parole hearing and possible release after 25 years of incarceration." (*Id*. at p. 281.) Under our interpretation of the statutes, "Franklin's two consecutive 25-year-to-life sentences *remain valid*, even though section 3051, subdivision (b)(3) has altered his parole eligibility date by operation of law . . . ." (*Id*. at p. 284, italics added.) "By simply transforming the affected sentences to life with parole terms, [section 3051] avoid[s] the *Miller* issues associated with the earlier sentences." (*In re Kirchner* (2017) 2 Cal.5th 1040, 1054 (*Kirchner*).) In the words of the high court: "Giving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by

resentencing them." (*Montgomery v. Louisiana* (2016) 577 U.S. __ [136 S.Ct. 718, 736] (*Montgomery*).)

The Attorney General understates the significance of *Franklin*'s evidence preservation function in the statutory scheme. The Legislature's intent in enacting sections 3051 and 4801 was " 'to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release' " upon a showing of maturation and rehabilitation. (*Franklin, supra,* 63 Cal.4th at p. 277, quoting Stats. 2013, ch. 312, § 1.) *Franklin* authorized postjudgment proceedings to effectuate that intent. A *Franklin* proceeding gives "an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' . . . ." (*Franklin,* at p. 284.)[3] At the proceeding, "the

---

[3] *Franklin* processes are more properly called "proceedings" rather than "hearings." A hearing generally involves definitive issues of law or fact to be determined with a decision rendered based on that determination. (*People v. Pennington* (1967) 66 Cal.2d 508, 521; see generally *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1247; Black's Law Dict. (10th ed. 2014) p. 836, col. 1.) A proceeding is a broader term describing the form or manner of conducting judicial business before a court. (See generally *The Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 270–272; *People v. Gutierrez* (1986) 177 Cal.App.3d 92, 99–100; Black's Law Dict., *supra*, p. 1398, col. 1.) While a judicial officer presides over a *Franklin* proceeding and regulates its conduct, the officer is not called upon to make findings of fact or render any final determination

court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. [The defendant] may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Franklin*, at p. 284.)

We recently explained the role a *Franklin* proceeding plays in the youth offender parole process. In *People v. Rodriguez* (2018) 4 Cal.5th 1123 (*Rodriguez*), the Court of Appeal declined to remand the case to the trial court, reasoning that the defendant had a " ' "sufficient opportunity" ' " at the original sentencing hearing to make a record. (*Id.* at p. 1131.) We disagreed and held that Rodriguez was "entitled to remand for an opportunity to supplement the record with information relevant to his eventual youth offender parole hearing. Although a defendant sentenced before the enactment of Senate Bill No. 260 [(2013–2014 Reg. Sess.)] could have introduced such evidence through existing sentencing procedures, he or she would not have had reason to know that the subsequently enacted legislation would make such evidence particularly relevant in the parole process. Without such notice, any opportunity to introduce evidence of youth-related factors is not adequate in light of the purpose of Senate Bill No. 260." (*Ibid.*)

---

at the proceeding's conclusion. Parole determination are left to the Board.

Nothing about the remands in *Franklin* and *Rodriguez* was dependent on the nonfinal status of the juvenile offender's conviction. On the contrary, "[t]he statutory text makes clear that the Legislature intended youth offender parole hearings to apply retrospectively, that is, to *all eligible youth offenders regardless of the date of conviction*." (*Franklin*, *supra*, 63 Cal.4th at p. 278, italics added.) By a parity of reasoning, an evidence preservation process should apply to all youthful offenders now eligible for such a parole hearing. As *Franklin* emphasized, the possibility that relevant evidence will be lost may increase as years go by. (*Id.* at pp. 283–284.) This reality is no less true for offenders whose convictions are final on direct appeal.

Nor were the remands in *Franklin* and *Rodriguez* dependent on this court's authority under section 1260 to resolve a factual issue affecting the validity of the judgment. (See *People v. Braxton* (2004) 34 Cal.4th 798, 818–819 [citing cases].) Rather, a *Franklin* proceeding is unrelated to the validity of the defendant's sentence. Neither the entitlement to a youth offender parole hearing, nor the evidence preservation process "disturb[s] the finality of state convictions." (*Montgomery*, *supra*, 577 U.S. at p. __ [136 S.Ct. at p. 736].) It follows that nothing in that proceeding depends on the pendency of a direct appeal challenging the judgment or this court's remand authority under section 1260. Consistent with this view, Cook confirmed at oral argument that he does not seek to attack the validity of his judgment, which is final.

Accordingly, we hold that an offender entitled to a hearing under sections 3051 and 4801 may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final.

*B. Section 1203.01 Provides an Adequate Remedy at Law in the First Instance To Conduct a Postjudgment Evidence Preservation Proceeding in the Trial Court*

A question remains. How does a juvenile offender with a final conviction gain access to the trial court for an evidence preservation proceeding? We have explained that " '[t]here is no statutory authority for a trial court to entertain a postjudgment motion that is unrelated to any proceeding then pending before the court. [Citation.] Indeed, a motion is not an independent remedy. It is ancillary to an on-going action and " 'implies the pendency of a suit between the parties and is confined to incidental matters in the progress of the cause. As the rule is sometimes expressed, a motion relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy.' " [Citation.] In most cases, after the judgment has become final, there is nothing pending to which a motion may attach.' " (*People v. Picklesimer* (2010) 48 Cal.4th 330, 337 (*Picklesimer*), quoting *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 76–77.)

Cook sought a writ of habeas corpus and the parties vigorously debate the propriety of that remedy. The Attorney General argues that the remand procedure contemplated in *Franklin* was not necessary to cure an underlying illegality in the juvenile's sentence. Rather, he urges, it is an evidence-gathering procedure designed to implement the new parole provisions in section 3051 by reopening youthful offenders' sentencing hearings, allowing them to build a more robust record of their characteristics and circumstances related to the offense for later use at a parole hearing. Here, the Attorney General reasons that, "absent any underlying unlawful restraint or illegal sentence, habeas corpus would not

historically lie to reopen a sentencing hearing in a long final case in order to supplement a record."

Cook counters that depriving him of an opportunity to make a record in the trial court amounts to an unlawful custodial restraint cognizable on habeas corpus. According to Cook, a *Franklin* proceeding is necessary to effectively cure the unconstitutionality of his sentence under *Miller*, and to carry out the statutory mandate of section 4801, subdivision (c) that the Board "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." He argues that the writ of habeas corpus is a proper vehicle to oversee the operation of the parole system.

Our state Constitution guarantees the right to habeas corpus. (Cal. Const., art. I, § 11; *In re Reno* (2012) 55 Cal.4th 428, 449.) The availability of the writ is implemented by section 1473, subdivision (a), which provides: "A person unlawfully imprisoned or restrained of his or her liberty, under any pretense, may prosecute a writ of habeas corpus to inquire into the cause of his or her imprisonment or restraint." (See also *People v. Villa* (2009) 45 Cal.4th 1063, 1068.) " '[I]t is well settled that the writ of *habeas corpus* does not afford an all-inclusive remedy available at all times as a matter of right. It is generally regarded as a special proceeding. "Where one restrained pursuant to legal proceedings seeks release upon *habeas corpus*, the function of the writ is merely to determine the legality of the detention by an inquiry into the question of jurisdiction and the validity of the process upon its face, and whether anything has transpired since the process was issued

to render it invalid." ' " (*Villa*, at pp. 1068–1069, quoting *In re Fortenbury* (1940) 38 Cal.App.2d 284, 289.)

We need not decide if the writ of habeas corpus is expansive enough to afford Cook the relief he seeks. Cook has a plain, speedy, and adequate remedy at law that makes resort to habeas corpus unnecessary, at least in the first instance. (*In re Gandolfo* (1984) 36 Cal.3d 889, 899–900; see generally, *Kirchner*, *supra*, 2 Cal.5th at p. 1052, and cases cited; 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Writs, § 25, pp. 630–631.) In cases with final judgments, section 1203.01 gives the trial court authority to conduct an evidence preservation proceeding as envisioned in *Franklin*.

Under section 1203.01, the trial court may create a postjudgment record for the benefit of the Department of Corrections and Rehabilitation. Specifically, subdivision (a) provides: "Immediately after judgment has been pronounced, the judge and the district attorney, respectively, may cause to be filed with the clerk of the court a brief statement of their views respecting the person convicted or sentenced and the crime committed, together with any reports the probation officer may have filed relative to the prisoner. The judge and district attorney shall cause those statements to be filed if no probation officer's report has been filed. The attorney for the defendant and the law enforcement agency that investigated the case may likewise file with the clerk of the court statements of their views respecting the defendant and the crime of which he or she was convicted." (§ 1203.01, subd. (a).) Thereafter, the clerk of the court must mail copies of the statements and reports to the Department of Corrections and Rehabilitation (*ibid*.), providing information to assist effective administration of the law (see *In re Minnis* (1972) 7 Cal.3d 639, 650).

The purpose of section 1203.01 parallels that of a *Franklin* proceeding. As we explained in *Franklin*, the statutes "contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration." (*Franklin, supra*, 63 Cal.4th at p. 283.) A *Franklin* proceeding serves that purpose. (*Id.* at p. 284.) Further, recognizing the court's authority under section 1203.01 to gather youth offender evidence effectuates sections 3051 and 4801.

Section 1203.01, subdivision (a) does specify that any statements by the judge and prosecutor should be filed "[i]mmediately after judgment has been pronounced." As California Rules of Court, rule 4.480 explains, a section 1203.01 statement "should be submitted no later than two weeks after sentencing so that it may be included in the official Department of Corrections and Rehabilitation, Division of Adult Operations case summary that is prepared during the time the offender is being processed at the Reception-Guidance Center of the Department of Corrections and Rehabilitation . . . ." There is no indication, however, that the statute's requirement deprives the court of authority to act at a later time. (See *People v. Duran* (1969) 275 Cal.App.2d 35, 37.)

Section 1203.01, subdivision (a) also uses permissive language: If a probation report is filed, the judge, the district attorney, defense counsel, and the investigative law enforcement agency "may" cause statements about the offender and the offense to be filed with the clerk. But it would be improper for the court to preclude a juvenile offender's chance to supplement the record with information relevant to his eventual youth offender parole hearing. We recently

emphasized that point in *Rodriguez*, *supra*, 4 Cal.5th 1123. There, the Court of Appeal rejected the juvenile offender's request to remand the case under *Franklin*, reasoning that " '[i]nformation from the probation reports prepared for both defendants, the juvenile fitness hearing reports, their pretrial statements to officers, as well as what was provided at the sentencing hearings, would all be available for consideration at the youth offender parole hearing.' " (*Id.*, at p. 1131.) We concluded that, without prior notice of Senate Bill No. 260 (2013–2014 Reg. Sess.) and the *Franklin* process, "any opportunity to introduce evidence of youth-related factors is not adequate in light of the purpose of Senate Bill No. 260." (*Rodriguez*, at p. 1131.) Accordingly, we held that the juvenile offender was "entitled to remand for an opportunity to supplement the record with information relevant to his eventual youth offender parole hearing." (*Ibid.*)

At oral argument, the Attorney General agreed section 1203.01 authorizes the court to receive postjudgment submissions for transmission to the Board and opined the statute was "the most elegant way to cut the Gordian knot in this case." But he has also emphasized the limited scope of the remedy, observing that "the 'brief statement' provisions of section 1203.01 bear little resemblance to the adversarial proceedings articulated in *Franklin*." To be sure, section 1203.01, enacted in 1947, did not anticipate our 2016 *Franklin* decision. Nonetheless, "[c]ourts have inherent power, as well as power under section 187[4] of the Code of Civil Procedure, to

---

[4] Code of Civil Procedure section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other

adopt any suitable method of practice, both in ordinary actions
and special proceedings, if the procedure is not specified by
statute or by rules adopted by the Judicial Council. It is not only
proper but at times may be necessary for a court to follow
provisions of the Code of Civil Procedure which are harmonious
with the objects and purposes of the proceeding although those
provisions are not specifically made applicable by the statute
which creates the proceeding." (*Tide Water*, *supra*, 43 Cal.2d at
p. 825, fn. omitted.) While section 1203.01 does not mention a
*Franklin* proceeding to preserve evidence, neither does it
prohibit one.

*People v. Superior Court* (*Morales*) (2017) 2 Cal.5th 523 is
instructive. That case considered whether the superior court
had jurisdiction to grant a motion to preserve evidence in
anticipation of a future hearing for postconviction discovery
under section 1054.9 in certain habeas corpus proceedings.
(*Morales*, at p. 526.) We concluded that the granting of such a
motion came within the trial court's inherent authority under
Code of Civil Procedure section 187 to facilitate its discovery
jurisdiction. (*Morales*, at pp. 531–532.) We rejected the
Attorney General's argument that section 1054.9 established an
exclusive procedure that excluded preservation motions,
labeling that interpretation of Code of Civil Procedure section
187 "unduly narrow in this context." (*Morales*, at p. 532.)
Section 1054.9 simply did not speak to the situation where a

statute, conferred on a Court or judicial officer, all the means
necessary to carry it into effect are also given; and in the exercise
of this jurisdiction, if the course of proceeding be not specifically
pointed out by this Code or the statute, any suitable process or
mode of proceeding may be adopted which may appear most
conformable to the spirit of this code."

condemned inmate is prevented from filing a postconviction discovery motion because he lacks counsel. (*Morales*, at p. 532.) Accordingly, we concluded that trial courts, which have jurisdiction to grant a condemned inmate's motion for postconviction discovery, "have the inherent power to protect that jurisdiction by entertaining motions for the preservation of evidence that will ultimately be subject to discovery under that statute when the movant is appointed habeas corpus counsel." (*Id.* at p. 533.)

*People v. Hyde* (1975) 49 Cal.App.3d 97 is similar. After his conviction became final, Hyde filed a motion in the trial court for an award of presentence custody credits, relying on recent case authority entitling him to such credit. (*Id.* at pp. 99–100.) The trial court denied the motion in a manner suggesting that it lacked jurisdiction. (*Id.* at p. 99, fn. 2.) The Court of Appeal reversed. It noted that the defendant was not seeking to amend a final judgment; rather he was requesting that the court "supplement its judgment and advise the Adult Authority of a simple fact (how much presentence time in custody he has been subjected to) in an official and authentic manner so that the Adult Authority can take that action which the statutory law (and the constitutional principles applicable thereto) obligates it to take." (*Id.* at p. 100.) Nonetheless, "[n]o precise statutory remedy" was available to solve the problem. (*Id.* at p. 101.) The court concluded that, although the Adult Authority ultimately had responsibility for the custody credit calculations, "[t]here must be a judicial process by which disputed facts may be resolved when the defendant and the Adult Authority are

unable to agree on the correct answer." (*Ibid.*)[5] Relying on Code of Civil Procedure sections 128 and 187, the court held that the disputed question may be presented, on noticed motion, to the sentencing court which possessed the necessary information. (*Hyde*, at pp. 102–103.)

Although the circumstances of *Morales* and *Hyde* differ in some respects from the case before us, their logic is persuasive. Section 1203.01, augmented by the court's inherent authority to craft necessary procedures under Code of Civil Procedure section 187, authorizes it to preserve evidence as promptly as possible for future use by the Board. Transmission of that record to the Department of Corrections and Rehabilitation, in turn, enables the Board to "discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' . . . ." (*Franklin*, *supra*, 63 Cal.4th at p. 284.)

Our recent decision in *Kirchner*, *supra*, 2 Cal.5th 1040, does not compel a different result. There, a juvenile offender filed a habeas corpus petition requesting *resentencing* because the court did not give due consideration to the factors laid out in *Miller*, *supra*, 567 U.S. 460. (*Kirchner*, at pp. 1042–1043.) Unlike this case, the petitioner in *Kirchner* did not qualify for a later youth offender parole hearing. (*Id.* at p. 1049, fn. 4.) Nonetheless, the Court of Appeal denied habeas relief, reasoning that the petitioner had an adequate remedy at law under section 1170, subdivision (d)(2) (hereafter section

---

[5]    Section 2900.5 was subsequently amended to require the trial court to calculate presentence custody credits. (See *People v. Mendoza* (1986) 187 Cal.App.3d 948, 951–952.)

16

1170(d)(2)), which authorized recall of the sentence and resentencing. (*Kirchner*, at p. 1043.)

We disagreed with the Court of Appeal's conclusion, observing, "Section 1170(d)(2) was not designed to address *Miller* error, and its recall of sentence and resentencing procedure is not well suited to remedy the constitutional error of which petitioner complains." (*Kirchner, supra*, 2 Cal.5th at p. 1043.) Under the express terms of the statute, some juveniles were categorically excluded from its reach without regard to whether their sentences comported with *Miller*. (*Id.* at pp. 1049, 1053.) Eligible juveniles were required to submit a petition describing their remorse, relating their efforts at rehabilitation, and stating that at least one of four qualifying circumstances applies. (*Id.* at pp. 1049 & fn. 6, 1053.) The sentencing court was required to find at least one of these circumstances true by a preponderance of the evidence before resentencing the minor. (*Id.* at pp. 1050, 1053.) Finally, in considering the propriety of resentencing, the court " 'may consider' a set of enumerated factors, which only partially overlap with those identified in *Miller*." (*Id.* at p. 1054.) Reviewing these criteria, we concluded that section 1170(d)(2) did not provide an adequate remedy at law for *Miller* error: "as a process designed to revisit *lawful* sentences of life without parole, section 1170(d)(2) limits the availability of resentencing under its terms, and the resentencing inquiry it prescribes does not necessarily account for the full array of *Miller* factors in the manner that a proper resentencing under *Miller* would." (*Kirchner*, at p. 1043.)

*Kirchner* is distinguishable. Cook is not seeking a resentencing, but instead a chance to create a record relevant to a parole hearing. Further, in *Kirchner*, both the express language and legislative intent behind section 1170(d)(2) were

so specific as to *preclude* an effective *Miller* resentencing. (*Kirchner*, *supra*, 2 Cal.5th at pp. 1043, 1055.) No similar hurdle blocks access to a *Franklin* proceeding under the authority of section 1203.01, augmented as necessary by Code of Civil Procedure section 187. In fact, section 1203.01's framework provides a more flexible, efficient, and suitable means of collecting information for the benefit of the Board than the rigid requirements of habeas corpus.

In exercising habeas jurisdiction, the courts " 'must abide by the procedures set forth in . . . sections 1473 through 1508.' " (*People v. Romero* (1994) 8 Cal.4th 728, 737, quoting *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865.) Those procedures include a petition alleging unlawful restraint, naming the custodian, and specifying the facts on which the claim is based. The petition must be verified and include reasonably available documentary evidence supporting the claims. (§§ 1474–1475; *People v. Duvall* (1995) 9 Cal.4th 464, 474; *Romero*, at p. 737.) It must state whether any prior application has been made and the result of those proceedings, and must allege that the petition is timely or demonstrate good cause for delay. (§ 1475; *In re Robbins* (1998) 18 Cal.4th 770, 780–781, 805; *In re Clark* (1993) 5 Cal.4th 750, 783, 798, fn. 35.) When presented with a habeas petition, the court must assess whether it states a prima facie case for relief and whether the stated claims are procedurally barred. (*Romero*, at p. 737.) If the petition meets these requirements, the court must issue a writ of habeas corpus or order to show cause, receive a return and traverse, and may, if necessary, order an evidentiary hearing on the claims. (*Id.* at pp. 738–740; *Duvall*, at pp. 475–478.) The purpose of the evidentiary hearing is to make findings of fact and credibility determinations necessary to adjudicate the petition. (*In re*

*Hardy* (2007) 41 Cal.4th 977, 993.) Finally, relief in habeas corpus is granted by "an order or judgment directing the petitioner's release from custody or alteration of the conditions of the petitioner's confinement." (*Romero*, at p. 743.)

As noted, Cook is not seeking release. Nor does he challenge the jurisdiction of the court or the validity of the proceedings that led to his now final judgment and sentence. The relief he seeks is entirely consistent with section 1203.01, which has nothing to do with the validity of a trial court's judgment. The section does not define procedures that will culminate in a new judgment and does not contemplate modification of the original judgment. By its terms, the statute addresses the filing of statements with the court "after judgment has been pronounced." (§ 1203.01, subd. (a).) Further, the motion we recognize under section 1203.01 does not impose the rigorous pleading and proof requirements for habeas corpus. (See discussion, *post*, at pp. 20–21.) Nor does it require the court to act as a factfinder. Rather, it simply entails the receipt of evidence for the benefit of the Board. (*Franklin*, *supra*, 63 Cal.4th at p. 284.) For these reasons, resort to the writ of habeas corpus in the first instance would be unnecessarily cumbersome. Not only is initial resort to section 1203.01, supplemented as necessary by Code of Civil Procedure section 187, an adequate remedy, it is superior in its efficiency and purpose to reliance on the great writ.[6]

---

[6] Nothing we say here forecloses an offender, after exhausting the procedures outlined in this opinion, from filing a petition for writ of mandate or habeas corpus to compel the trial court to perform its duties under *Franklin*. (See generally

Having recognized the opportunity for offenders with final judgments to preserve evidence in the trial court, we need not address arguments made by amicus curiae the Post-Conviction Justice Project and the Pacific Juvenile Defender Center that the procedures and resources available to inmates through the parole process are inadequate to implement the statutory mandates of sections 3051 and 4801. (See *Rodriguez, supra*, 4 Cal.5th at p. 1132; *Franklin, supra*, 63 Cal.4th at p. 286.) "[I]n the absence of any concrete controversy in this case concerning suitability criteria or their application by the Board or the Governor, it would be premature for this court to opine on whether and, if so, how existing suitability criteria, parole hearing procedures, or other practices must be revised to conform to the dictates of applicable statutory and constitutional law." (*Franklin*, at p. 286.)[7] We offer no opinion here whether the federal Constitution compels the Board to consider individualized evidence bearing on youth-related factors, or whether the unavailability of such information might undermine the Board's decision. Finally, as we have before, we express no view on whether a *Franklin* proceeding is constitutionally required. (*Rodriguez*, at p. 1132.)

*C.* Franklin *Proceedings for Cases with Final Judgments*

For inmates like Cook who seek to preserve evidence following a final judgment, the proper avenue is to file a motion in superior court under the original caption and case number,

---

*Picklesimer, supra*, 48 Cal.4th at pp. 339–340; *In re Gandolfo, supra*, 36 Cal.3d at pp. 899–900.) We express no opinion on the propriety of a writ in that context.

[7]      We now have such a case before us. (*In re Palmer*, review granted Jan. 16, 2019, S252145.)

citing the authority of section 1203.01 and today's decision. The motion should establish the inmate's entitlement to a youth offender parole hearing and indicate when such hearing is anticipated to take place, or if one or more hearings have already occurred. The structure for the proceeding is outlined in *Franklin, supra*, 63 Cal.4th at page 284, and further informed by the youth-related factors set forth in section 4801, subdivision (c). The proceeding is not limited to the filing of statements referenced in section 1203.01. Rather, consistent with *Franklin* and the court's inherent authority, the offender shall have the opportunity to "place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Franklin*, at p. 284.)

Although *Franklin* mandates an opportunity for evidence preservation, the trial court may "exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations." (*Rodriguez, supra*, 4 Cal.5th at p. 1132.) The court may, for example, require an offer of proof regarding the evidence the offender seeks to present, so that it can determine whether such evidence is relevant to youth-related factors and meaningfully adds to the already available record. It may also determine whether testimony is "appropriate" (*Franklin, supra*, 63 Cal.4th at p. 284), or if other types of evidentiary submissions will suffice. Finally, *Franklin* emphasized that the purpose of the proceeding was to allow the offender to assemble evidence "at or

near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." (*Id.* at pp. 283–284.) Some offenders who file these postjudgment motions in the trial court may have spent a decade or more in prison. Some may have even come before the Board for a youth offender parole hearing. The court may consider whether a *Franklin* proceeding is likely to produce fruitful evidence considering such factors as the passage of time and whether the offender has already benefitted from the factfinding procedures set forth in section 3051, subdivision (f)(1) and (2) with the assistance of appointed counsel (§ 3041.7; Cal. Code Regs., tit. 15, § 2256, subd. (c)). Additionally, some offenders may choose not to present certain forms of evidence, such as live testimony, or to forgo a *Franklin* proceeding altogether. Delving into the past is not always beneficial to a defendant. The opportunity for a *Franklin* hearing is just that: an opportunity.

It bears emphasis that the proceeding we outlined in *Franklin* derives from the statutory provisions of sections 3051 and 4801. (*Franklin, supra,* 63 Cal.4th at pp. 283–284; see *Rodriguez, supra,* 4 Cal.5th at p. 1132 ["We expressed no view in *Franklin,* and we need not express any view here, on whether such a remand is constitutionally required"].) While we unquestionably have the power to interpret these laws, the Legislature is in a superior position to consider and implement rules of procedure in the first instance. The Legislature remains free to amend the pertinent statutes to specify what evidence-gathering procedures should be afforded to youth offenders, taking into account the objectives of the youth offender parole hearing and the burden placed on our trial courts to conduct

*Franklin* proceedings for the many thousands of offenders who will be eligible for them under today's decision.

## III.  DISPOSITION

The judgment of the Court of Appeal granting Cook's petition for writ of habeas corpus is reversed and the matter is remanded to the Court of Appeal with directions to deny the petition.  The denial order shall be without prejudice to Cook's filing a motion in the trial court for a *Franklin* proceeding under the authority of section 1203.01 and today's decision.

**CORRIGAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

In re COOK

S240153


Concurring and Dissenting Opinion by Justice Kruger


I agree with much of what the majority says: Although the youth offender parole statutes provide no mechanism for individuals serving final sentences to return to court to create records for use at their later parole hearings, Penal Code section 1203.01 (section 1203.01) fills that gap. That provision, which was enacted for the very purpose of preserving information for later use in parole determinations, permits both sides in a criminal case to submit to the court postjudgment written statements about the offender and his or her crime. As the Attorney General acknowledged at oral argument, the provision applies even in the case of final judgments. It thus supplies Cook and others similarly situated with the record-preservation mechanism that the youth offender parole statutes lack.

My disagreement with the majority concerns the scope of the procedures authorized under section 1203.01. That provision authorizes the submission of documentary evidence only; it does not authorize a full-blown evidentiary hearing, including the taking of live testimony, subject to cross-examination. Unlike the majority, I do not believe courts have the inherent authority to expand section 1203.01 to provide for such hearings when the Legislature has not chosen to do so. The procedures prescribed in section 1203.01 were not casually selected; they represent the Legislature's considered judgment about how to balance the offender's interest in preserving information with the state's interest in limiting the costs and

burdens of additional postjudgment proceedings. Unless and until the Legislature reconsiders, it seems to me we are bound by its choice.

It is true the procedures prescribed by section 1203.01 are not as expansive as the procedures we ordered in *People v. Franklin* (2016) 63 Cal.4th 261, 284. But that case, unlike this one, came to us on direct review of a nonfinal judgment; our power to supervise the conduct of ongoing criminal proceedings gave us the power to fashion instructions for the trial court on remand. We have no similar power in a case that has already become final. And we have never held that the specific record-preservation procedures we ordered in *Franklin*, including the opportunity to present live testimony, are required either by the terms of the youth offender parole statutes or by the constitutional guarantee they are designed to implement. Absent such a requirement, there is no reason to think that precisely the same procedures must be made available to the many thousands of youthful offenders serving final sentences, a great number of whom committed their offenses many years or even decades ago.

This brings me to a final observation. For many youthful offenders serving final sentences, it is likely already too late to capture all the information about the particular youthful characteristics that might have been available closer to the time of their offenses. (See maj. opn., *ante*, at p. 22.) Given this practical reality, we should be careful not to overstate the importance of any particular set of record-preservation procedures to the proper functioning of the youth offender parole system.

By statute, the charge of the Board of Parole Hearings is to give each youthful offender "a meaningful opportunity to obtain release" (Pen. Code, § 3051, subd. (e)), according "great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity" (*id.*, § 4801, subd. (c)). A robust record of an individual's youthful characteristics will undoubtedly be helpful to the Board in undertaking this inquiry. But the majority opinion does not hold, and it should not be read to suggest, that in the absence of such a record the Board necessarily will be unable to give such youthful offenders the meaningful consideration to which they are entitled. Even without such information, the Board can and must carry out its duty to give "great weight" to the mitigating nature of youth. Immaturity, impetuosity, and the like are "hallmark features" of youth (*Miller v. Alabama* (2012) 567 U.S. 460, 477), confirmed by "common sense—[] what 'any parent knows,' " (*id.* at p. 471) and by "science and social science as well" (*ibid.*). In all cases, the Board is required to begin from the assumption that a crime committed by a juvenile does not reveal the same depravity or incorrigibility as the same crime committed by an adult, and to focus on the individual's present maturity and record of rehabilitation.

\* \* \* \* \*

Again, as noted, I agree with much of what the majority says today. Under section 1203.01, Cook may submit to the superior court written statements respecting his youthful characteristics. Consistent with Penal Code section 3051, subdivision (f)(2), this submission may include relevant evaluations, as well as statements from "[f]amily members, friends, school personnel, faith leaders, and representatives

from community-based organizations with knowledge about the individual before the crime or his or her growth and maturity since the time of the crime." In my view, however, whether to order additional record-preservation procedures in final cases is a matter for the Legislature to decide.


**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Cook
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 7 Cal.App.5th 393
**Rehearing Granted**

_____

**Opinion No.** S240153
**Date Filed:** June 3, 2019
_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Katrina West

_____

**Counsel:**

Anthony Maurice Cook, Jr., in pro. per.; and Michael Satris, under appointment by the Supreme Court, for Petitioner Anthony Maurice Cook, Jr.

Heidi L. Rummel, Ian C. Graves and Richard L. Braucher for the Post-Conviction Justice Project and Pacific Juvenile Defender Center as Amici Curiae on behalf of Petitioner Anthony Maurice Cook, Jr.

Kamala D. Harris and Xavier Becerra, Attorneys General, Edward C. DuMont, State Solicitor General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland and Jeffrey M. Laurence, Assistant Attorneys General, Michael R. Johnsen, Deputy State Solicitor General, A. Natasha Cortina, Theodore Cropley, Parag Agrawal and Lynne G. McGinnis, Deputy Attorneys General, for Respondent the People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael Satris
Law Office of Michael Satris
P.O. Box 337
Bolinas, CA  94924
(415) 868-9209

Jeffrey M. Laurence
Assistant Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5897