Filed 2/2/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>STEVEN JAMES LIPPTRAPP,<br><br>   Defendant and Appellant. | G058891<br><br>(Super. Ct. No. 98NF2850)<br><br>ORDER MODIFYING OPINION; DENYING REQUEST FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on January 11, 2021, be modified as follows:

(1)  On page 10, the entire footnote No. 7 shall be deleted and replaced with the following footnote:  "While the Attorney General provides legal authority to support its claim resentencing was an unauthorized request, it does not offer any explanation to support the assertion the trial court lacked authority to appoint counsel.  It is unclear from the briefing whether the Attorney General was suggesting Lipptrapp had no right to counsel for resentencing or for the *Franklin* proceeding, or for both matters.  Lipptrapp's request for counsel was written to cover more than the resentencing proceedings.  We

note, the trial court will need to decide the scope of the right to counsel, in the first instance, on remand.

(2)  On page 13 the entire last paragraph beginning with "As stated earlier in this opinion . . ." and the heading "III.  *Appointment of Counsel*", shall be deleted.

This modification does not change the judgment.

The petition for rehearing is denied.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>STEVEN JAMES LIPPTRAPP,<br><br>   Defendant and Appellant. | G058891<br><br>(Super. Ct. No. 98NF2850)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Kimberly Menninger, Judge. Reversed and remanded.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

In 1995, when Steven James Lipptrapp[1] was 25 years old, he admitted that he attempted two murders and engaged in street terrorism. The trial court sentenced him to a determinate 30-year prison term. In 2019, Lipptrapp, acting in propria persona, filed a motion requesting appointment of counsel, resentencing, and a *Franklin*[2] proceeding. This appeal concerns only the trial court's denial of his request for a *Franklin* proceeding. We conclude Lipptrapp adequately established his eligibility for a *Franklin* proceeding and, accordingly, we reverse the order, remand the matter, and direct the trial court to oversee the evidence preservation process.

FACTUAL BACKGROUND

It is not necessary to discuss the details of Lipptrapp's crimes, because these facts are not relevant to deciding the issue on appeal concerning his postjudgment order. Suffice it to say, on December 2, 1999, Lipptrapp pleaded guilty to two counts of attempted murder (Pen. Code, §§ 664, subd. (a)/187, subd. (a))[3] and street terrorism (§ 186.22, subd. (a)). Lipptrapp admitted he committed the attempted murders to benefit a criminal street gang (§ 186.22, subd. (b)), and he personally discharged a firearm (§ 12022.53 subd. (c)). He admitted to having suffered a prior strike offense (§ 667, subds. (d) & (e)(1)). The trial court sentenced Lipptrapp to a determinate 30-year term in prison.

On November 22, 2019, Lipptrapp filed a motion for appointment of counsel, resentencing, and for a *Franklin* proceeding. To support the motion, Lipptrapp

---

[1]     We note the defendant's name appears with two different spellings. Court documents reflect he spells his name Lipptrapp, while appellate counsel refers to him as Liptrapp. For purposes of this opinion, we have adopted the version used in the record.

[2]     *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).

[3]     All further statutory references are to the Penal Code, unless otherwise indicated.

2

submitted several exhibits, including the abstract of judgment and minute orders relating to his case.

The trial court docket contains three entries showing Judge Lance Jensen "read and considered [a] Notice of Parole Hearing" on October 7, 2019, October 31, 2019, and January 30, 2019. Our record contains a copy of a letter dated January 10, 2020, from the Board of Parole Hearings (Board) to the court. The letter, filed by the court on January 15, 2020, stated Lipptrapp's next parole hearing date was scheduled for April 23, 2020.

The following month, on February 4, 2020, the trial court (Judge Kimberly Menninger) summarily denied Lipptrapp's motion. No parties were present at the proceedings. The docket reflects the court determined Lipptrapp lacked standing to move to modify his sentence and he failed to present enough information to warrant a *Franklin* proceeding. With respect to the latter issue, the court wrote, "[t]o the extent defendant seeks an opportunity to establish a record of information relevant to a youth offender parole hearing, the present conclusory submission does not establish entitlement to the sought after relief. [Citations.]"

DISCUSSION

I. *Applicable Law*

In 2014, the Legislature enacted law providing a parole eligibility mechanism for juvenile offenders. (*Franklin, supra*, 63 Cal.4th at p. 277; § 3051.) "[S]ection 3051 . . . requires the Board to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration. [Citation.] The date of the hearing depends on the offender's '[c]ontrolling offense,' which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' [Citation.] A juvenile offender whose controlling offense carries a term of 25 years to life or greater is 'eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously

3

released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.' [Citation.] The statute excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing: those who are sentenced under the 'Three Strikes' law [citation] or Jessica's Law [citation], those who are sentenced to life without parole, and those who commit another crime 'subsequent to attaining 23 years of age . . . for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.' [Citation.]" (*Franklin, supra,* 63 Cal.4th at pp. 277-278.)

"Section 3051 thus reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole. Apart from the categories of offenders expressly excluded by the statute, section 3051 provides all juvenile offenders with a parole hearing during or before their 25th year of incarceration. The statute establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' [citation] so that he or she may have 'a meaningful opportunity to obtain release' [citation]." (*Franklin, supra,* 63 Cal.4th at p. 278.) Section 4801, subdivision (c), further provides that when reviewing the parole suitability of a prisoner who was under 25 years of age at the time of the offense, the Board must "give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

In *Franklin*, the defendant was 16 years old when he committed murder and the trial court was statutorily required to sentence him to two consecutive sentences of 25 years to life. (*Franklin, supra,* 63 Cal.4th at p. 268.) The court sentenced the defendant before sections 3051 and 4801, subdivision (c), became effective. (*Franklin, supra,* 63 Cal.4th at pp. 268, 276.) In his appeal, the defendant challenged the constitutionality of his sentence under *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*),

4

*Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), contending the sentence was barred as the functional equivalent of a mandatory life without parole (LWOP) sentence for a juvenile offender. (*Franklin, supra,* 63 Cal.4th at p. 268.) The defendant argued the Eighth Amendment to the federal constitution prohibited life without parole sentences for juvenile offenders. (*Miller, supra,* 567 U.S. at p. 465; *Caballero, supra,* 55 Cal.4th at p. 268.)

The *Franklin* court determined the defendant's constitution claim was mooted by the passage of sections 3051 and 4801. (*Franklin, supra,* 63 Cal.4th at p. 268.) It explained the Legislature created those provisions to bring juvenile sentencing into conformity with *Miller, Graham,* and *Caballero.* (*Ibid.*) Nevertheless, the court recognized the defendant raised "colorable concerns as to whether he was given adequate opportunity at sentencing to make a record of mitigating evidence tied to his youth." (*Id.* at pp. 268-269.) It provided the following analysis: "The criteria for parole suitability set forth in . . . sections 3051 and 4801 contemplate that the Board's decision making at Franklin's eventual parole hearing will be informed by youth-related factors, such as his cognitive ability, character, and social and family background at the time of the offense. Because Franklin was sentenced before the high court decided *Miller* and before our Legislature enacted [sections 3051 and 4801], the trial court understandably saw no relevance to mitigation evidence at sentencing. In light of the changed legal landscape, we remand this case so that the trial court may determine whether Franklin was afforded sufficient opportunity to make such a record at sentencing." (*Franklin, supra,* 63 Cal.4th at p. 269.) The court clarified that if the trial court determined the defendant did not make an accurate record, he was entitled to a hearing where he could "place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile

offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Id.* at p. 284.)

In *People v. Rodriguez* (2018) 4 Cal.5th 1123 (*Rodriguez*), our Supreme Court considered a case similar to *Franklin,* where a defendant was sentenced before the creation of sections 3051 and 4801. It determined the defendant was "entitled to remand for an opportunity to supplement the record with information relevant to his eventual youth offender parole hearing." (*Rodriguez, supra,* 4 Cal.5th at p. 1131.) Our Supreme Court held the trial court must provide a defendant "and the prosecution an opportunity to supplement the record" with information and "the trial court may exercise its discretion to conduct this process efficiently, ensuring that the information introduced is relevant, noncumulative, and otherwise in accord with the governing rules, statutes, and regulations." (*Id.* at pp. 1131-1132.)

Our Supreme Court in *In re Cook* (2019) 7 Cal.5th 439, 451 (*Cook*), clarified inmates who are entitled to a youth offender parole hearing under section 3051 "may seek the remedy of a *Franklin* proceeding even though the offender's sentence is otherwise final." When considering the significance of *Franklin's* evidence preservation function in the statutory scheme, the court made the following observation: "*Franklin* processes are more properly called 'proceedings' rather than 'hearings.' A hearing generally involves definitive issues of law or fact to be determined with a decision rendered based on that determination. [Citations.] A proceeding is a broader term describing the form or manner of conducting judicial business before a court. [Citation.] While a judicial officer presides over a *Franklin* proceeding and regulates its conduct, the officer is not called upon to make findings of fact or render any final determination at the proceeding's conclusion. Parole determination are left to the Board." (*Id.* at p. 449, fn. 3.) Because of this distinction, the court determined, "Nothing about the remands in *Franklin* and *Rodriguez* was dependent on the nonfinal status of the juvenile offender's conviction[]" and section 3051 makes clear it is to apply retrospectively to all youthful

6

offenders.  (*Cook, supra,* 7 Cal.5th at p. 450.)  "[T]he possibility that relevant evidence will be lost may increase as years go by [citation] . . . is no less true for offenders whose convictions are final on direct appeal."  (*Ibid*.)

Relevant to this appeal, the *Cook* court also considered the question:  "How does a juvenile offender with a final conviction gain access to the trial court for an evidence preservation proceeding?"  (*Cook, supra,* 7 Cal.5th at p. 451.)  In that case, the parties "vigorously debate[d]" the propriety of defendant's decision to file a writ of habeas corpus.  (*Ibid.*)  The answer, the court explained, is to permit inmates to file "a motion in [the] superior court under the original caption and case number, citing the authority of section 1203.01 and [the *Cook*] decision."  (*Cook, supra,* 7 Cal.5th at p. 458.)  It explained, that "[u]nder section 1203.01, the trial court may create a postjudgment record for the benefit of the Department of Corrections and Rehabilitation," and although the statute "does not mention a *Franklin* proceeding to preserve evidence" the court possesses the authority to adopt the procedure for this purpose.  (*Id.* at pp. 452-454.)[4]

The court added that the motion "should establish the inmate's entitlement to a youth offender parole hearing and indicate when such hearing is anticipated to take place, or if one or more hearings have already occurred."  (*Cook, supra,* 7 Cal.5th at p. 458.)  The court also noted the motion "does not impose the rigorous pleading and proof requirements for habeas corpus. [Citation.]"  (*Id.* at p. 457.)  Rather, section 1203.01 provided defendants with "a plain, speedy, and adequate remedy at law that

---

[4]  Section 1203.01, subdivision (a), provides that after the judgment "the judge and the district attorney . . . [may file] a brief statement of their views respecting the person convicted or sentenced and the crime committed, together with any reports the probation officer may have filed relative to the prisoner. . . . The attorney for the defendant and the law enforcement agency that investigated the case may likewise file . . . statements of their views respecting the defendant . . . .  Immediately after the filing of those statements and reports, the clerk of the court shall mail a copy thereof . . . to the Department of Corrections and Rehabilitation at the prison or other institution to which the person convicted is delivered."

makes resort to habeas corpus unnecessary, at least in the first instance. [Citations.] In cases with final judgments, section 1203.01 gives the trial court authority to conduct an evidence preservation proceeding as envisioned in *Franklin.*" (*Cook, supra,* 7 Cal.5th at p. 452.)

II. *Analysis*

We conclude Lipptrapp's motion contained sufficient information for him to gain access to a *Franklin* evidence preservation proceeding. First, Lipptrapp's motion followed the recommendations made in the *Cook* opinion to include the relevant criminal case information and pertinent legal authority. The moving papers appropriately identified Lipptrapp's original criminal case's caption and the case number. Lipptrapp also correctly cited to section 1203.01 and the Supreme Court's *Cook* and *Franklin* decisions in (1) the title of his motion, (2) the second sentence of text, and (3) the legal discussion. Consequently, the court was clearly notified about the basis for the motion as well as the cases giving the trial court authority to conduct evidence preservation proceedings. (*Cook, supra,* 7 Cal.5th at p. 452.)

Second, Lipptrapp established his eligibility for a section 3051 youth offender parole hearing. Specifically, Lipptrapp stated he was 25 years old when charged with the underlying criminal offenses and he received a determinative 30-year prison sentence. Lipptrapp, as a self-represented litigant, also managed to include several pages of coherent supporting legal authority and analysis, citing relevant U.S. Supreme Court and California Supreme Court cases. He discussed legal principles concerning youthful offenders, the nature and purpose of youth offender parole hearings, the goal of section 3051, and what evidence was relevant for a *Franklin* proceeding. With respect to this last issue, Lipptrapp asserted his trial attorney "did not fully investigate and present" evidence concerning his juvenile characteristics and other youth-related factors discussed in *Franklin, supra,* 63 Cal.4th at page 284. He supported the motion by attaching several exhibits, including an abstract of judgment which correctly reflected the duration of his

8

prison sentence. It also showed he was born in 1974 and committed the crimes in 1998 (he was 24 years old).[5]

In his concluding remarks, Lipptrapp clearly and plainly asked the court to issue the following three orders: (1) "for a *Franklin* hearing;" (2) "for resentencing" of his firearm enhancement due to the recent amendment of section 12022.53; and (3) "for appointment of counsel'" at the resentencing hearing.

On appeal, Lipptrapp maintains, "it is difficult to imagine what more an inmate *could* provide to demonstrate his entitlement" to a *Franklin* proceeding. The Attorney General does not dispute Lipptrapp was eligible for a *Franklin* proceeding. However, he maintains the court did not err by denying the motion because the pleadings were defective and Lipptrapp can later file another request.

The Attorney General's first argument suggests the motion was defective because Lipptrapp incorrectly requested relief in the form of resentencing and appointment of counsel. The Attorney General maintains the court lacked jurisdiction to resentence under section 12022.53 and properly "denied the motion accordingly."[6] The Attorney General's argument closes with a telling observation, acknowledging Lipptrapp's motion contained "a third form of relief." Specifically, the Attorney General observed he was "mindful that despite [Lipptrapp's] request for the above inappropriate relief, he did correctly title his motion as a request for a *Franklin* proceeding pursuant to [*Cook*] . . . [and] he did specifically also ask for a . . . a *Franklin* hearing." This partial

---

[5]     Lipptrapp's appellate counsel explains his client erroneously calculated he was 25 years old when charged with the crimes. However, this error does not matter because he would have qualified under 3051 whether he was 24 or 25 years old.

[6]     Senate Bill No. 620 (2017-2018 Reg. Sess.) amended section 12022.53, subdivision (h), effective January 1, 2018 (Stats. 2017, ch. 682, § 2). In early 2019, courts determined the amendment did not apply retroactively to defendants whose convictions were final. (E.g., *People v. Fuimaono* (2019) 32 Cal.App.5th 132, 134.) Lipptrapp, who filed his motion in November 2019, was apparently unaware of this new case authority.

9

concession highlights the problem with the Attorney General's first legal argument. A motion requesting three different remedies is not fatally defective simply because two of the requested forms of relief are unavailable. The Attorney General cites to no authority, and we found none, holding the court may deny a motion made under section 1203.01, requesting an evidentiary preservation proceeding authorized by section 3051, simply because the motion contained other unauthorized requests.[7]

The Attorney General maintains the second defect with Lipptrapp's motion is his failure to satisfy the pleading requirements for a *Franklin* proceeding. Although the trial court did not indicate what information was missing, the Attorney General advances the theory that the court determined the request was defective because Lipptrapp failed to include the date of his next parole hearing. The Attorney General argues that because Lipptrapp failed "to meet this dating requirement" it cannot be said the court's ruling was contrary to the law (or an abuse of discretion). As with the first argument, the Attorney General offered additional commentary suggesting the motion was likely adequate. He made the following acknowledgement: "While it may be regrettable that in the interest of judicial economy, the trial court elected against overlooking this unstated fact in [Lipptrapp's] pleading, it remains that the court's denial of the motion was legally correct. Given that the court's denial was *not* made with prejudice, it would appear that appellant's remedy is to file a new, properly pled motion for a *Franklin* hearing."

Lipptrapp asserts, and we agree, the "dating requirement" argument "elevat[es] form over substance" and is based on "nonexistent rules of pleading." In

---

[7]	The Attorney General's argument was premised on the assumption Lipptrapp's request for resentencing encompassed his wish for appointed counsel. In his motion, Lipptrapp stated counsel should be appointed for any resentencing proceedings, but also more generally, he needed counsel to "protect his rights" under the Sixth Amendment of the federal constitution. The Attorney General does not comment on whether Lipptrapp could request counsel, or should be appointed counsel, during a *Franklin* proceeding. We address this issue anon.

addition to being legally incorrect, the requirement is based on the false and unfair assumption that an incarcerated person, acting in propia persona, will always know his or her next parole hearing date. In this case, there was nothing to suggest Lipptrapp knew anything about his next parole hearing. Indeed, Lipptrapp filed his motion in November 2019, *two months before* the parole board sent a letter to the trial court notifying it of the next parole hearing. We decline to speculate about when and what information is available to incarcerated persons.

Moreover, we disagree with the Attorney General's reading of the *Cook* opinion as creating any specific requirements or duty to inform the court about upcoming parole hearing dates. The *Cook* opinion resolved a dispute about the "proper avenue" for inmates seeking an evidentiary preservation proceeding. It rejected the theory that inmates must file a detailed habeas petition, in favor of the theory a more time efficient and simple remedy was adequate. It held inmates may "file a motion in superior court under the original caption and case number, citing the authority of section 1203.01 and today's decision." (*Cook, supra,* 7 Cal.5th at p. 458.) Lipptrapp's motion included all of these elements.

We appreciate the *Cook* court also noted, "The motion *should* establish the inmate's entitlement to a youth offender parole hearing and indicate when such hearing is anticipated to take place, or if one or more hearings have already occurred." (*Cook, supra,* 7 Cal.5th at p. 458, italics added.) The court's commentary about what a motion *should include* is not the same as creating mandatory pleading requirements. The court could have, but did not, hold an inmate "must" establish eligibility and also "must" provide information about the next parole hearing date in the moving papers.

The lack of mandatory pleading requirements is not surprising in light of the *Cook* court's characterization of the *Franklin* process as being different from requests for other types of hearings. The proceeding requires only judicial oversight of the collection of evidence (to be used at a later date). (*Cook, supra,* 7 Cal.5th at p. 457

11

[section 1203.01 does not "require the court to act as a fact finder . . . [r]ather it simply entails the receipt of evidence for the benefit of the Board"].)  Due to the limited resources generally available to inmates, the *Cook* court reasonably envisioned a simple pleading mechanism to get the process started.  A trial court does not need to know the date of the next parole hearing, or the dates of prior hearings, to begin overseeing *Franklin* proceedings.  The date is simply a logistical consideration.  The court should give the parties adequate time "make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years [or months] later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) . . . ."  (*Franklin, supra*, 63 Cal.4th at p. 284.)

Because the trial court did not need to know the parole hearing date to consider Lipptrapp's eligibility for a *Franklin* proceeding or to start the evidence gathering process, we conclude its omission was not a valid reason to summarily deny the motion.  Any negative effect caused by this omission was minimized by evidence the trial court's docket showed the court received letters directly from the Board about past and future parole hearing dates.  Based on our review of the entire record, we conclude it was error for the trial court to deny the motion for a *Franklin* proceeding.

We are unpersuaded by the Attorney General's assertion any error is harmless because the court's ruling was not made with prejudice and Lipptrapp may file "a new, properly pled motion."  The motion is already adequate and Lipptrapp is long overdue for his youth offender parole hearing.  He has been incarcerated for over 20 years and he was eligible for the hearing several years before he filed the motion.[8]  His April 2020 parole hearing presumably took place while this appeal was pending.  We fail

---

[8]     Section 3051 was amended effective January 1, 2016, to require youth offender parole hearings for offenders who were *25 years of age or younger* at the time of the controlling offense.  (Stats. 2015, ch. 471, § 1.)  Lipptrapp filed his motion in November 2019.

to see the logic in requiring Lipptrapp, who is an incarcerated and self-represented litigant, to resubmit his motion and wait additional time for a ruling.  As mentioned, for this remedy to be effective we would have to speculate Lipptrapp has been timely informed about his next parole hearing date.  This we will not do, and consequently, we reverse the order and remand the matter with directions for the trial court to conduct a *Franklin* proceeding as soon as possible.

III. *Appointment of Counsel*

As stated earlier in this opinion, the Attorney General viewed Lipptrapp's request for counsel as being intertwined with his resentencing argument.  Neither he nor appellant's counsel discussed whether Lipptrapp was entitled to the appointment of counsel for the *Franklin* proceeding on remand.  We conclude a party moving for relief under section 1203.01 is entitled to the appointment of counsel.  As discussed above, the purpose of the *Franklin* proceeding is to allow youth offenders to make an "accurate record" of youth-related mitigating factors so the Board can later consider those factors in determining if the defendant is fit for parole.  (*Franklin, supra*, 63 Cal.4th at p. 284.)  Given the critical role a *Franklin* proceeding plays in determining parole eligibility at a subsequent youth offender parole hearing, we conclude the proceeding qualifies as a "critical stage" to which the right to counsel attaches.  (Cf. *In re Cortez* (1971) 6 Cal.3d 78, 87 ["an effective presentation of the merits of the petition [to strike a prior conviction] depends . . . upon his having the assistance of counsel to fashion facts and arguments into a persuasive appeal to the court"].)  Merely allowing an incarcerated defendant to submit documentation he or she believes might be relevant at a future youth offender parole hearing is far short of the remedy contemplated under *Franklin*.

## DISPOSITION

The postjudgment order is reversed and the matter remanded to the trial court to conduct a *Franklin* proceeding as soon as possible.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

14