Filed 3/19/18 (unmodified opinion attached)
(Opinion following denial of rehearing)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | G053424 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 11WF0653) |
| ANDREW TRAN, | ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

Appellant petitions for rehearing on the basis newly-enacted legislation entitles him to a remand to permit the trial court to determine whether to dismiss his firearm enhancements in the interest of justice. (Pen. Code, § 12022.53, subd. (h), as amended Jan. 1, 2018; *People v. Woods* (2018) 19 Cal.App.5th 1080 [recent amendments to Pen. Code, § 12022.53, subd. (h) apply retroactively to cases on direct appeal].) Appellant did not raise this issue on appeal, and "'[i]t is well settled that arguments . . . cannot be raised for the first time in a petition for rehearing.' [Citation.]" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092; *People v. Senior* (1995) 33 Cal.App.4th 531, 537.)

Appellant recognizes the procedural problem of raising this argument in a petition for rehearing, but urges its consideration on the basis it would forestall a habeas corpus petition. On the basis of judicial economy, and considering that the case is already being remanded for a *Franklin* hearing to allow the parties to make a record regarding appellant's future suitability for parole, we agree. Any decision respecting

whether the interests of justice warrant dismissing appellant's firearm enhancements would have a logical bearing on this issue. Therefore, the scope of the remand shall include consideration of appellant's request to dismiss the enhancements. We offer no opinion as to whether or not that request should be granted.

The petition for rehearing is DENIED.

It is hereby ordered that the opinion filed herein on February 16, 2018, is modified in the following particulars:

1. On page 2, second full paragraph, last sentence, remove the phrase "we remand for this limited purpose" and replace with "we remand for further proceedings."

2. On page 12, in the Disposition, second sentence, after "63 Cal.4th 261", insert a period and delete the remainder of the paragraph.

This modification does not effect a change in the judgment.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.

2

Filed 2/16/18 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G053424 |
| v. | (Super. Ct. No. 11WF0653) |
| ANDREW TRAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge. Affirmed and remanded with directions.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Randall D. Einhorn and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

This is a case in which we order a remand to allow appellant to prepare for a hearing 25 years in his future. It is devoutly to be hoped this will someday be viewed as a reasonable step forward in penological and cultural development rather than too little, too late.

Appellant Andrew Tran was convicted of murdering and attempting to murder two rival gang members. On appeal, he contends his conviction for attempted murder must be reversed because the trial court gave the jury a confusing and inapt instruction on the kill zone theory. We reject this contention. However, appellant was only 16 years old when he committed his crimes, and we agree with him that the case must be remanded so he can make a record of information that will be relevant to his youthful offender parole hearing in 25 years. Thus, while we affirm the judgment in its entirety, we remand for this limited purpose.

FACTS

On the night of March 19, 2011, appellant had a party at his house that was heavily attended by members of his gang. The party dispersed around midnight, but the revelers did not go home. Instead, they filed into several cars and headed to a pool hall in Westminster where several members of a rival gang were hanging out. Appellant drove to the pool hall in a white sedan with other members of his gang. As they were heading out, the front passenger gave appellant a gun, and he tucked it away in his car.

When appellant arrived at the pool hall, he parked by the other cars in his group. Then he and Jonathan Tieu walked up to the pool hall and made themselves visible to their rivals. It didn't take long before the two groups were exchanging hostile words in the parking lot. Witnesses to the exchange thought there was going to be a gang fight right then and there, but appellant and Tieu retreated to appellant's car, and their rivals got into their vehicles. Appellant then drove to the exit and positioned his car so he could see inside any vehicles that were leaving. When an SUV full of rivals passed

2

through the exit, appellant said, "That's them." Appellant's front passenger Benjamin Nguyen told appellant to follow the SUV, and he did.

There were eight people inside the SUV, including passengers Scottie Bui and Roger James. As the vehicle travelled along Westminster Boulevard, appellant pulled alongside it. Nguyen rolled down his window and began yelling out gang-related taunts, and the people in the SUV did the same. Nguyen then pulled a gun and began firing at the SUV. One of the shots hit Bui in the head, killing him. Another shot hit James in the neck, but he survived. Investigators later recovered five expended cartridges at the scene.

Appellant was arrested shortly after the shooting. He initially denied any wrongdoing but eventually admitted his role in the incident, as described above. He also admitted having a history of antagonism toward James and seeing him at the pool hall when the two groups squared off before the shooting.

He was charged with first degree murder, attempted murder, shooting at an occupied vehicle and street terrorism. (Pen. Code, §§ 187, subd. (a), 664/187, 246, 186.22, subd. (a).)[1] The prosecution alleged as a special circumstance that the murder was carried out to further the activities of appellant's gang. (§ 190.2, subd. (a)(22).) It also alleged firearm and gang enhancements with respect to the first three charges. (§§ 12022.53, subds. (d), (e)(1), 186.22, subd. (b)(1).) The jury acquitted appellant of first degree murder but convicted him of murder in the second degree. It found him guilty of the remaining charges and found the gun and gang allegations true. The trial court sentenced appellant to 40 years to life in prison for his crimes.

---

[1] All further statutory references are to the Penal Code.

3

## DISCUSSION

### *Kill Zone Theory*

Appellant challenges his attempted murder conviction on the basis the trial court improperly instructed the jury on the kill zone theory of liability. In appellant's view, the kill zone theory was not applicable to the facts of his case, and the trial court worded its instruction in a confusing manner that amounted to "gibberish." While the instruction was inartfully worded, it was certainly not "gibberish." We believe the kill zone theory was amply supported by the evidence, and appellant could not possibly have been prejudiced by the way the instruction was phrased. We therefore uphold his conviction for attempted murder.[2]

Since he was not the shooter, appellant was prosecuted under aiding and abetting principles. Specifically, the prosecution theorized appellant was guilty of attempted murder because he directly assisted Nguyen in shooting James and/or because the shooting was a natural and probable consequence of the disturbance appellant caused at the pool hall. Appellant does not challenge the trial court's instructions pertaining to these theories. Instead, he focuses on the instructions pertaining directly to the attempted murder charge.

As to that charge, the trial court told the jury, "To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; and [¶] 2. The defendant intended to kill that person." The court also instructed the jury:

"A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or kill zone. [¶] In order to

---

[2] Respondent contends appellant forfeited his right to challenge the kill zone instruction because he did not object to it in the trial court. However, since the propriety of the instruction bears on the underlying fairness of appellant's conviction for attempted murder, we will address the merits of his claim. (§ 1259 [notwithstanding the absence of an objection at trial, an appellate court may review any jury instruction that affects the defendant's substantial rights].)

4

convict the defendant of the attempted murder of Roger James, the People must prove that the defendant not only intended to kill Roger James but also either intended to kill Roger James or intended to kill everyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill Roger James or intended to kill Roger James by killing everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of Roger James."

Neither the prosecutor nor defense counsel mentioned the kill zone theory during closing arguments. However, during its deliberations, the jury sent the trial court a note asking, "1. Would [the defendant] have to had specifically targeted Roger James to be found guilty of attempted murder? [¶] 2. What if he targeted [the] entire kill zone without expressly thinking [of] Roger James?"

After consulting with counsel, the trial court told the jury, "1. Yes, if you find the kill zone theory applies. The kill zone theory applies only if the evidence shows the defendant intended to kill Roger James by killing everyone in the area in which Roger James was located. [¶] 2. On the other hand, you may find the defendant guilty of attempted murder if you find the attempt was made and the defendant had the intent to kill everyone in the car."

The first issue we must decide is whether the kill zone theory was applicable to the facts of this case. For the reasons explained in *People v. Bland* (2002) 28 Cal.4th 313 (*Bland*), we believe it was. Like the present case, *Bland* involved a gang-related shooting. Following a brief conversation with the victims, the defendant and his companion fired multiple shots at their car, killing the driver and wounding his two passengers. (*Id*. at p. 318.) The evidence suggested the defendant may have only wanted to kill the driver, who was a gang member, and not his passengers, who were not. (*Id*. at pp. 318-319.) Nonetheless, the jurors were told that even if they found that was the case, they could still convict the defendant of attempting to murder the passengers on the

theory of transferred intent, in which case the intent to kill the driver would carry over to the passengers. (*Id*. at p. 319.)

On appeal, the Supreme Court found that while the doctrine of transferred intent can be applied when the primary target is murdered and unintended victims are also killed, it does not apply when the unintended victims are only injured. (*Bland, supra*, 28 Cal.4th at pp. 326-331.) Thus, it was improper for the trial court to instruct the jury on that doctrine. (*Ibid*.) However, *Bland* affirmed the defendant's convictions for attempted murder on the theory of concurrent intent encompassed in the kill zone theory. (*Ibid*.)

As to that theory, the court explained, "although the intent to kill a primary target does not *transfer* to a survivor, the fact the person desires to kill a particular target does not preclude finding that the person also, concurrently, intended to kill others within . . . the 'kill zone.' 'The intent is concurrent . . . when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity. For example, an assailant who places a bomb on a commercial airplane intending to harm a primary target on board ensures by this method of attack that all passengers will be killed. Similarly, consider a defendant who intends to kill A and, in order to ensure A's death, drives by a group consisting of A, B, and C, and attacks the group with automatic weapon fire or an explosive device devastating enough to kill everyone in the group. The defendant has intentionally created a "kill zone" to ensure the death of his primary victim, and the trier of fact may reasonably infer from the method employed an intent to kill others concurrent with the intent to kill the primary victim.'" (*Bland, supra*, 28 Cal.4th at pp. 329-330, quoting *Ford v. State* (Md. Ct. App. 1992) 625 A.2d 984, 1000-1001, fn. omitted.)

Comparing those hypotheticals to the facts in *Bland*, the Supreme Court held, "This case permits – virtually compels – a similar inference. Even if the jury found

6

that defendant primarily wanted to kill [the driver] rather than [his] passengers, it could reasonably also have found a *concurrent* intent to kill those passengers when defendant and his cohort fired a flurry of bullets at the fleeing car and thereby created a kill zone. Such a finding fully supports attempted murder convictions as to the passengers." (*Bland, supra*, 28 Cal.4th at pp. 330-331.) The court also noted, "This concurrent intent theory is not a legal doctrine requiring special jury instructions, as is the doctrine of transferred intent. Rather, it is simply a reasonable inference the jury may draw in a given case: a primary intent to kill a specific target does not rule out a concurrent intent to kill others." (*Id.* at p. 331, fn. 6.)

As in *Bland*, the circumstances in this case indicate appellant and Nguyen intentionally created a kill zone around the murder victim Bui. Indeed, by firing a hail of bullets at the vehicle in which Bui was riding, they intentionally exposed everyone in the vehicle to mortal danger. Under these facts, the jury could reasonably infer appellant and Nguyen not only intended to kill Bui, but everyone else in the vehicle, including James. Therefore, the kill zone instruction was factually applicable. (Compare *People v. Stone* (2009) 46 Cal.4th 131, 138 [kill zone theory deemed inapt because by firing but a single bullet into a crowd of people, the defendant did not employ a means of killing "'that inevitably would result in the death of other victims within a zone of danger.'"])

The odd thing about the kill zone instruction given in this case, however, is that it did not identify the murder victim Bui as the primary target of the gun fire. Instead, it named James as both the primary target and a secondary victim of the gun fire. This could very well have prejudiced *the prosecution*, insofar as it effectively deprived it of the opportunity to obtain a conviction for attempted murder based on the theory of concurrent intent. However, it could not possibly have prejudiced appellant because it expressly required the jury to find he harbored the intent to kill James in order to convict him of that offense. In fact, the kill zone instruction was repetitive in terms of conveying that requirement in that it required the jury to find "defendant not only intended to kill

7

Roger James," but also that he "intended to kill Roger James or intended to kill Roger James by killing everyone in the kill zone[.]" Either way, appellant could not have been found guilty of a kill zone attempted murder under this instruction unless the jury found he intended to kill James. Therefore, any error in the wording of the kill zone instruction was patently harmless. There is no basis to disturb appellant's conviction for attempting to murder James.

*Sentencing Issue*

Appellant also contends the case must be remanded so he can make a record of information that will be relevant to his future parole hearing. On this point, we agree.

Appellant was sentenced on April 1, 2016. At that time, he was facing a statutorily-mandated prison sentence of 40 years to life on count 1, representing 15 years to life for second degree murder (§ 190, subd. (a)) and 25 years to life for the firearm enhancement (§ 12022.53, subds. (d), (e)). Even though appellant was only 16 years old when he committed the murder, defense counsel did not argue imposition of that sentence would be cruel and unusual. An alert trial court addressed that issue sua sponte and rejected it. It sentenced appellant to 40 years to life on count 1 and imposed concurrent terms and struck or stayed punishment on the remaining counts and enhancements.

Appellant does not challenge the substance of his sentence. He simply wants the chance to offer evidence bearing on his future suitability for parole. And he should have it.

In recent years, the courts have redefined the parameters of juvenile sentencing. In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the United States Supreme Court held it is cruel and unusual to sentence juvenile nonhomicide offenders to life in prison without parole (LWOP). In *Miller v. Alabama* (2012) 567 U.S. __ [132 S.Ct. 2455] (*Miller*), the high court extended the reasoning of *Graham* to prohibit mandatory LWOP for juvenile homicide offenders. And in *People v. Caballero* (2012)

8

55 Cal.4th 262 (*Caballero*), the California Supreme Court interpreted *Graham* and *Miller* to bar de facto LWOP sentences for juvenile nonhomicide offenders.  The underlying rationale of these decisions is that "[b]ecause juveniles have diminished culpability and greater prospects for reform," as compared to adult offenders, "'they are less deserving of the most severe punishments.'  [Citation.]"  (*Miller, supra*, 132 S.Ct. at p. 2464.)

In response to *Graham, Miller, and Caballero*, the Legislature enacted section 3051.  That section entitles offenders such as appellant, who have committed a crime carrying a term of 25 years to life or greater and are not otherwise excluded from its terms, to a "youth offender parole hearing" 25 years into their prison sentence.  (§ 3051, subd. (b)(3); see also §§ 3046, subd. (c) & 4801, pertaining to juvenile parole hearings.)

In *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), which was decided *after* appellant's sentencing hearing took place, the California Supreme Court discussed the import of section 3051.  The court explained the statute contemplates the parole board will consider "youth-related factors, such as [the juvenile offender's] cognitive ability, character, and social and family background at the time of [his] offense," in determining his suitability for parole.  (*Id*. at p. 269.)  To that end, "section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.'"  (*Id*. at p. 283.)  *Franklin* observed, "Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away."  (*Id*. at pp. 283-284.)  *Franklin* also noted the parole board must consider any "'psychological evaluations and risk assessment instruments'" that may be relevant to show "'any subsequent growth and increased maturity of the individual.'"  (*Id*. at p. 284, quoting

9

§ 3051, subd. (f)(1).)  The Supreme Court stated this "implies the availability of information about the offender *when he was a juvenile*."  (*Ibid.*, italics added.)

In *Franklin*, the record was unclear whether the juvenile had been given a sufficient opportunity at sentencing to make a record that included this sort of information.  (*Franklin, supra*, 63 Cal.4th at p. 284.)  Accordingly, the Supreme Court remanded the case to allow the trial court to make this determination.  (*Ibid.*)  In so doing, they also instructed that if the trial court determined the juvenile had not been afforded a sufficient opportunity to make a record, he should be allowed to present "any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors."  (*Ibid.*)  Writing separately in *Franklin*, Justice Werdegar described this as a "'baseline hearing'" relevant to the juvenile's future parole prospects.  (*Id.* at p. 287 (conc. & dis. opn. of Werdegar, J.).)

Relying on this court's decision in *People v. Phung* (2017) 9 Cal.App.5th 866, respondent contends appellant is not entitled to a remand because he had a sufficient opportunity at his sentencing hearing to present evidence pertaining to his youthful characteristics.  However, as appellant correctly notes, *Phung* involved a substantive challenge to the juvenile's sentence on Eighth Amendment grounds, it did not address the question presented here: whether the juvenile was given a sufficient opportunity to make the sort of record contemplated by *Franklin*.  (*Id.* at pp. 872-881.)

Moreover, because appellant's sentencing hearing preceded *Franklin*, it is doubtful he would have been permitted to present evidence bearing on his future suitability for parole, even if he had asked the trial court to do so.  After all, it wasn't until *Franklin* was decided that juvenile offenders were expressly afforded that right.

10

Because appellant did not have the benefit of that decision at the time of his sentencing hearing, fairness dictates the matter be remanded for further proceedings.

In arguing otherwise, respondent contends appellant's probation report contains sufficient information to facilitate his future parole hearing. That report contains the standard information that is supplied to the trial judge in virtually every criminal case, i.e., information about the defendant's family background and social history, the circumstances of his offense, his prior record, his adjustment in custody, and the probation officer's recommendation for sentencing. However, the report is largely bereft of information about appellant's character, cognitive ability, psychological functioning or maturity. It tells us very little about what kind of 16-year-old appellant is other than the fact he is the kind who commits this crime. Appellant should have the chance to provide a fuller picture than that. Indeed, the report essentially ignores the fact appellant was only 16 years old when his crimes occurred, and it offers no analysis or insight whatsoever as to how this factor may have affected his behavior. In short, the report does not obviate the need for a hearing respecting appellant's youthful characteristics, as contemplated by the *Franklin* decision.

We do not take lightly the additional expense this ruling entails. But the issue will be whether a middle-aged man who has spent a quarter-century in prison should be released. We think decisions like that should be as informed as possible.

Respondent also argues a remand is unnecessary because appellant has failed to explain exactly what information he would provide at a *Franklin* hearing. That argument puts the cart before the horse. We suspect it will take a considerable amount of time and effort for appellant and his attorney to prepare for a *Franklin* hearing. At a minimum, they will have to gather records, letters and other information on appellant's behalf and look into the prospect of psychological testing and a risk assessment analysis. Not knowing what their investigative efforts might turn up, it would be unrealistic to expect them to make an offer of proof at this stage of the case. As other courts have

11

done, we will simply remand the matter to the trial court to permit the parties the opportunity to present evidence bearing on the factors discussed in *Franklin*. (See, e.g., *People v. Jones* (2017) 7 Cal.App.5th 787, 818-820; *People v. Perez* (2016) 3 Cal.App.5th 612, 618-621.)

## DISPOSITION

The judgment is affirmed. The case is remanded pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 for the limited purpose of affording both parties the opportunity to make a record of information that will be relevant to the parole board as it fulfills its obligations under section 3051. Resentencing is not required.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.