Filed 9/30/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br><br>DANIEL CARRANZA,<br><br>     Defendant and Appellant. | A152211<br><br>(Solano County<br>Super. Ct. No. FCR311578) |

Defendant and appellant Daniel Carranza (appellant) appeals following his conviction of attempted murder. In the unpublished portion of this decision, we reject appellant's contention that the trial court abused its discretion in admitting gang evidence at trial. In the published portion, we remand for the limited purpose of affording both parties the opportunity to make a record of information relevant to appellant's future youth offender parole hearing. We conclude appellant's claim pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) is not subject to the forfeiture doctrine; while the claim may be waived, no such waiver occurred in the present case.

PROCEDURAL BACKGROUND

In October 2015, the Solano County District Attorney filed an information charging appellant with attempted premeditated murder (Pen. Code, §§ 187, subd. (a) & 664, subd. (a))[1] and assault with a deadly weapon (§ 245, subd. (a)(1)). As to the attempted murder charge, the information alleged appellant had used a knife (§ 12022,

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

[1] All undesignated statutory references are to the Penal Code.

subd. (b)(1)).  As to both counts, the information alleged that appellant personally inflicted great bodily injury (§ 12022.7, subd. (a)) and that appellant committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

In October 2016, a jury convicted appellant of assault with a deadly weapon and found true the great bodily injury enhancement.  The jury found the gang enhancement not true.  The jury was unable to reach a verdict on the attempted murder charge, and the court declared a mistrial as to that count.

Appellant was retried on the attempted murder charge.  In June 2017, a jury convicted appellant of the charge and found true allegations that the attempt was willful, deliberate, and premeditated; appellant personally used a knife; and appellant personally inflicted great bodily injury.

In August 2017, the trial court sentenced appellant to a total of 11 years to life in prison.

This appeal followed.

FACTUAL BACKGROUND

In November 2014, the victim, Ivan Fraire, worked at a factory in Vacaville.  On the night of November 26, as Fraire worked at a machine press, he was stabbed from behind.  He turned and saw the assailant, who was wearing a red shirt; he had previously seen the man two or three times at the factory.  Indeed, Fraire had greeted his assailant while coming back from break about 30 minutes before the attack.  Fraire was stabbed in the abdomen, chest, and arm before the attacker ran away.  Fraire appeared to have lost at least 40 percent of his blood by the time he reached the hospital.  His wounds were consistent with being stabbed by a large knife, and he would have died without medical attention.

Before being taken to the hospital, Fraire told his supervisor, his father (who also worked at the factory), and a police officer that his attacker was wearing a red shirt.  He also told the officer the attacker was a Hispanic male co-worker.  He told another officer at the hospital that the assailant was a Hispanic male with a shaved head wearing a red shirt.  At trial, Fraire identified appellant as his attacker, although he had been unable to

2

identify appellant in a photographic lineup while he was in the hospital. Fraire did on that occasion identify a photograph of appellant taken from Facebook as his attacker, but the photograph was one Fraire's mother showed him, not one of the photographs in the lineup.

On the night of the stabbing, other employees reported seeing appellant at work wearing a red or maroon 49er's sweatshirt or sweater, a red shirt or hoodie, and a red belt. On the night of the stabbing, appellant's supervisor saw appellant with a 12- to 15-inch knife—he described it as a machete. Appellant's job required him to cut cardboard, but he previously had done so with a folding knife with a three-inch blade. The supervisor had never seen the sort of long knife appellant had at the factory, and he told appellant to put the knife in his car.

On the evening of November 26, 2014, shortly after a meal break, appellant left his work station and walked towards the bathroom. At around 10:30 p.m., after appellant had been gone for between five and 20 minutes, his co-workers heard a commotion in the factory that turned out to be due to the stabbing. Appellant never returned to work and never punched out of work; he was the only employee unaccounted for.[2]

On December 3, 2014, appellant received a text message from someone named "Jaky," who commented that she was "on the run." Appellant responded, "Yeah. Am on the run too. That's crazy." Jaky asked appellant why and appellant responded, "Some hot shit, feel me. I can't tok [sic] about, feel?" Appellant was arrested on December 10 during a traffic stop.

Gang Evidence

Gang expert Detective Erik Watts testified generally about Norteño and Sureño gangs, explaining their historical origins as prison gangs and their areas of geographic predominance. Members display gang pride through clothing and tattoos. Norteños wear red clothing, while Sureños wear blue.

_____

[2] During trial, appellant presented testimony from a factory employee who testified he saw a nervous-looking man who he did not recognize in the bathroom shortly before the stabbing. The man was wearing a blue jacket.

3

The victim, Fraire, admitted he had been a member of a Vacaville Sureño street gang (the "Brown Pride Sureños"), but he said he left the gang two years before the stabbing. The gang's color was blue, and the gang's enemies were the Norteños, who claimed the color red. Fraire had several gang tattoos, including the words "Brown" and "Pride," one on each hand. He also on his right hand had the tattoo "BPS," for Brown Pride Sureños, a tattoo of one dot next to three dots, which is also associated with the Sureños. Those tattoos were covered by gloves while he was operating machines in the factory, but not when he entered or left the factory, clocked in or out, during breaks, or when he went to the bathroom. On the night of the stabbing, Fraire was wearing a blue jumpsuit, a blue tank top, and blue shorts.

Detective Watts opined appellant was a member of a Vacaville Norteño criminal street gang called the Brown Street Locos. The testimony was based on appellant's admission to being a Norteño member during a traffic stop in 2011, appellant's red clothing and various tattoos, photographs on appellant's phone, and appellant's association with a person with a "Brown Street Locs" tattoo.

Detective Watts also testified about gang culture with respect to attacks between members of different gangs. Committing crimes is considered "putting in work" for the gang, and the more work a gang member puts in, the higher his status within the gang becomes. Attacking a rival gang member would be considered high status "work;" Watts commented, "you'll be more respected because you're fighting the enemy." Among other tattoos, appellant had the word "active" tattooed on his right hand; gang members used that word to indicate they were actively committing crimes to "climb the ranks" in the gang. Watts had investigated violent attacks between Norteño and Sureño gang members and just being a member of a rival gang was enough to provoke a violent attack. Brown Street Locos members regard all Sureños as their enemies.

DISCUSSION

I. *The Trial Court Properly Admitted Gang Evidence*

Appellant contends the trial court erred in admitting evidence that appellant and Fraire were current and former members of rival Norteño and Sureño gangs, and that

4

rival gang members attack each other without provocation. The trial court did not abuse its discretion.

Prior to the second trial, the prosecutor moved in limine to admit "evidence of [appellant's] gang membership and testimony of a gang expert regarding the sociology and psychology of gang behavior for purposes of establishing motive and intent." Appellant's counsel moved to exclude all gang-related evidence. The trial court ruled the prosecution would be permitted to use other gang-related evidence to prove motive and intent unless it was unduly prejudicial. The court excluded as unduly prejudicial evidence that appellant assaulted a Sureño gang member in juvenile hall. At trial the court instructed the jury pursuant to CALCRIM No. 375 that it could consider "evidence of behavior by the defendant involving gang activity . . . for the limited purpose of deciding whether: [¶] The defendant acted with the intent to kill; or [¶] The defendant had a motive to commit the offenses alleged in this case. [¶] Do not consider this evidence for any other purpose. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime." The court also instructed the jury pursuant to CALCRIM No. 303 that, "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

Evidence Code section 1101, subdivision (a), provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (See also *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) However, "this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*Ewoldt*, at p. 393.) That is because Evidence Code, section 1101, subdivision (b) permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." If evidence is relevant to prove a fact such as intent or motive, "the trial

5

court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)' " [Citation.] 'Rulings made under [sections 1101 and 352] are reviewed for an abuse of discretion. [Citation.]' [Citation.] 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1328–1329.)

"In general, '[t]he People are entitled to "introduce evidence of gang affiliation and activity where such evidence is relevant to an issue of motive or intent." [Citation.]' [Citation.] '[E]ven where gang membership is relevant,' however, 'because it may have a highly inflammatory impact on the jury trial courts should carefully scrutinize such evidence before admitting it.' [Citation.] On the other hand, ' "[b]ecause a motive is ordinarily the incentive for criminal behavior, its probative value generally exceeds its prejudicial effect, and wide latitude is permitted in admitting evidence of its existence." ' " (*People v. McKinnon* (2011) 52 Cal.4th 610, 655.)

In the present case, the evidence that appellant had reason to attack the victim Fraire as a perceived rival gang member provided a motive for appellant to engage in the otherwise unprovoked, inexplicable assault.[3] Appellant's primary contention on appeal is that there was insufficient evidence that the attack had a nexus to appellant's gang membership to support an inference regarding his motive and intent. He argues, "there was virtually nothing about the circumstances of the assault . . . that suggested it was gang-related." We disagree. Although the assailant did not "call[] out a gang name,

---

[3] The circumstance that Fraire was a *former* gang member is not significant given that his tattoos and clothing would have given a rival gang member reason believe he was still associated with the Sureños. (See *People v. Williams* (1997) 16 Cal.4th 153, 194 ["defendant's alleged motive to kill Crips was just as arguable on facts suggesting (as they did) that the victim was dressed *like* a Crip when he was shot, as it would have been on facts suggesting he actually *was* a Crip"].)

display[] gang signs or otherwise state[] his gang affiliation" (*People v. Rios* (2013) 222 Cal.App.4th 542, 574),[4] the evidence showed the attacker was thoroughly dressed in red, while Fraire was thoroughly dressed in blue. The evidence also showed there was ample opportunity for a co-worker to have noticed Fraire's Sureño-associated tattoos on his hands. Although the jury in the first trial did not find the prosecution had proven the gang-relatedness of the assault beyond a reasonable doubt, that did not obligate the trial court to conclude there was insufficient evidence to support admission of the gang evidence to show motive and intent for the attack. Indeed, the otherwise inexplicable nature of the attack increased the plausibility of the gang motive and decreased the quantum of evidence necessary to show a "direct logical nexus" (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15) between the gang evidence and the stabbing. (See *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1551 ["The law does not disfavor the admission of expert testimony that makes comprehensible and logical that which is otherwise inexplicable and incredible."].) The evidence of the gang rivalry was also relevant to showing intent to kill.

The present case is distinguishable from *People v. Albarran* (2007) 149 Cal.App.4th 214, 227. There, the defendant, an active gang member, and a companion shot at a house during a birthday party. (*Id.* at pp. 217, 220.) There was hearsay that members of a rival gang were at the party, although the house was owned by someone who belonged to a gang with no known rivalry with the shooters' gang. (*Id.* at p. 221.) The trial court granted a new trial on a gang enhancement allegation but denied a new trial on the underlying charges, apparently concluding the gang evidence was relevant to the defendant's motive. (*Id.* at pp. 222, 226.) The court of appeal concluded the trial court erred because "There is nothing inherent in the facts of the shooting to suggest any specific gang motive." (*Id.* at p. 227.) In the present case, the victim's tattoos and the rival colors worn by appellant and Fraire, as well as the general inexplicability of the

---

[4] Respondent argues appellant effectively took credit for the stabbing by having the word "active" tattooed on his right hand shortly after the attack. We need not and do not address whether that provides additional support for the trial court's rulings.

7

unprovoked attack on a factory floor, presented a stronger case of relevance than that in *Albarran*.[5] The trial court did not abuse its discretion in concluding the gang evidence had a "tendency in reason to prove" (Evid. Code, § 210) appellant's motive and intent, and was therefore admissible under Evidence Code section 1101, subdivision (b). (See *People v. Williams*, *supra*, 16 Cal.4th at p. 193–194 [gang evidence relevant to show motive where the victim was wearing gang colors in an area claimed by rival gangs].)[6]

Neither did the trial court abuse its discretion under Evidence Code section 352. Although the evidence that appellant was an active gang member was inherently prejudicial, that was also the source of the probative value of the evidence in providing a motivation for appellant to have engaged in the unprovoked attack. The court excluded evidence that appellant had previously assaulted a Sureño gang member in juvenile hall, which would have been unduly prejudicial. None of the evidence admitted was "of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction." (*People v. Scott* (2011) 52 Cal.4th 452, 491.) The trial court's instructions decreased the risk the jury would consider the gang evidence for improper purposes. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.) The court did not abuse its discretion.[7]

---

[5] Appellant suggests Fraire might have been attacked by a member of his former gang as retaliation for leaving the gang, but that is not a plausible alternate explanation. Fraire testified he was still friends with the members of his former gang, he left the gang two years before the stabbing, and Detective Watts testified a Sureño gang member was not likely to wear red.

[6] Appellant argues the evidence in the present case was insufficient to prove the stabbing was gang related within the meaning of section 186.22, subdivision (b)(1). Most or all of the cases he cites appear to be distinguishable, but we need not reach that issue because appellant has not shown that admission of evidence under Evidence Code section 1101, subdivision (b) requires the same quantum of evidence to support a finding under the enhancement.

[7] Because there were "permissible inferences the jury [could] draw from the [gang] evidence," admission of the evidence did not violate appellant's federal constitutional right to due process. (*People v. Albarran*, *supra*, 149 Cal.App.4th at p. 229.)

II.     *A Limited Remand is Required Under* People v. Franklin

Appellant argues he is entitled to a limited remand to "make a record of information relevant to his eventual youth offender parole hearing." (*Franklin*, *supra*, 63 Cal.4th at p. 284.) The parties agree that appellant, who was 19 at the time of the offense, is within the scope of section 3051, subdivision (a)(1), which states that "any prisoner who was 25 years of age or younger . . . at the time of his or her controlling offense" shall be provided "[a] youth offender parole hearing . . . for the purpose of reviewing the [prisoner's] parole suitability . . . ." Under section 3051, subdivision (b)(2), appellant is entitled to the youth offender parole hearing during his 20th year of incarceration. At this hearing, the Board "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)

In *Franklin*, the California Supreme Court stated that the youth offender parole hearing statutes "contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration. For example, section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.' Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away. [Citation.] In addition, section 3051, subdivision (f)(1) provides that any 'psychological evaluations and risk assessment instruments' used by the Board in assessing growth and maturity 'shall take into consideration . . . any subsequent growth and increased maturity of the individual.' Consideration of 'subsequent growth and increased maturity' implies the availability of

9

information about the offender when he was a juvenile." (*Franklin*, *supra*, 63 Cal.4th at pp. 283–284.)

The defendant in *Franklin* was sentenced before enactment of the statutes providing for youth offender parole hearings and it was unclear whether he had the opportunity to submit this information at his sentencing hearing. (*Franklin*, *supra*, 63 Cal.4th at p. 282.) Accordingly, the Supreme Court remanded "the matter to the trial court for a determination of whether Franklin was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing. [¶] If the trial court determines that Franklin did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. Franklin may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' [citation]." (*Id.* at p. 284.)

On appeal, respondent contends appellant forfeited the opportunity to create a record of his characteristics in a *Franklin* proceeding because he was sentenced *after* the *Franklin* decision. (Cf. *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1131 [defendant sentenced before enactment at issue in *Franklin* did not have adequate opportunity to introduce evidence of youth-related factors]; *People v. Perez* (2016) 3 Cal.App.5th 612, 619 [same]; *People v. Tran* (2018) 20 Cal.App.5th 561, 570 [same, except defendant sentenced after enactment but before *Franklin*].) Respondent asserts, "The court did not

10

prevent appellant or counsel from presenting anything. That is all that was required under *Franklin*." Although *Rodriguez*, *Tran*, and *Perez* rely on the circumstance that sentencing preceded the enactment at issue in *Franklin* or *Franklin* itself in finding *no* forfeiture, none of those cases considered whether a defendant who fails to request an opportunity to create a record of youth-related factors at a post-*Franklin* sentencing forfeits the right to do so. (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["It is axiomatic that cases are not authority for propositions not considered."].)

Respondent's argument "understates the significance of *Franklin*'s evidence preservation function in the statutory scheme." (*In re Cook* (2019) 7 Cal.5th 439, 449 (*Cook*).) As explained in *Franklin*, *supra*, 63 Cal.4th at page 283, "In directing the Board to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner' (§ 4801, subd. (c)), the statutes also contemplate that information regarding the juvenile offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the Board's consideration." Although most of the cases have focused on the offender's opportunity to present evidence, *Franklin* makes clear that the People are also entitled to present relevant evidence. (*Franklin*, at p. 284.) To conclude that a defendant may forfeit the opportunity for a *Franklin* proceeding would frustrate the Legislature's intent that a record be created for the benefit of the Parole Board so it "may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c))." (*Franklin*, at p. 284.) Accordingly, we believe it is most consistent with *Franklin*, *Cook*, and the statutory scheme to conclude that a trial court has a sua sponte obligation to invite the parties to present evidence regarding youth-related factors before entry of judgment in cases where the defendant will be entitled to a youth offender parole hearing.

We recognize that in *Cook*, the California Supreme Court observed that "some offenders may choose . . . to forgo a *Franklin* proceeding altogether." (*Cook*, *supra*, 7 Cal.5th at p. 459.) We understand that to mean that an offender may waive the right to a *Franklin* proceeding, not that failure to request the proceeding forfeits the right to create

11

the record contemplated by the statutory scheme for the benefit of the Parole Board. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the ' "intentional relinquishment or abandonment of a known right." ' "].) Furthermore, we do not understand the Supreme Court to be suggesting that an offender can waive or forfeit the People's right to put on evidence relevant to the future youth offender parole hearing. (*Franklin*, *supra*, 63 Cal.4th at p. 284.) A trial court should conduct a *Franklin* proceeding and permit both parties to introduce appropriate evidence unless either or both waive the right to do so.[8]

Turning to an additional consideration, we observe that, normally, a defendant prejudiced by counsel's inaction in the trial court may rely on the ineffective assistance of counsel (IAC) framework to vindicate his or her rights. Restrictions on the use of that doctrine in the *Franklin* context provide further support for concluding *Franklin* claims are not subject to forfeiture. Claims of IAC may arise in two different procedural contexts. First, a defendant may raise it on direct appeal. It is, of course, well established an IAC claim requires a showing that "counsel's performance fell below a standard of reasonable competence, and that prejudice resulted." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) Such claims typically fail on appeal because " '[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.) *Wilson* continued, "because, in general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a

---

[8] The waiver from the defendant may be either oral or written and need not contain any particular phrasing so long as its terms would convey to a reasonable person the nature of the right to a *Franklin* proceeding, the defendant understands that right, and the defendant is giving it up. (See *People v. Johnson* (2002) 28 Cal.4th 1050, 1055 [waiver of "statutory right to custody credits" must be "knowing and intelligent," "as with the waiver of any significant right by a criminal defendant"]; accord *People v. Arevalo* (2018) 20 Cal.App.5th 821, 830.)

tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct. 'Having afforded the trial attorney an opportunity to explain, courts are in a position to intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence.' " (*Ibid.*; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 ["claims of ineffective assistance are often more appropriately litigated in a habeas corpus proceeding"].) Under this analysis, an IAC claim seeking a *Franklin* proceeding raised on direct appeal will rarely succeed because it will generally be unknown on appeal what evidence defense counsel failed to present.

The second context in which a defendant may normally assert an IAC claim is in a petition for writ of habeas corpus. However, that option may be unavailable in cases such as the present case because the California Supreme Court in *Cook* questioned the availability of the writ of habeas corpus in the context of *Franklin* claims. In *Cook*, the court acknowledged it was unclear whether "the writ of habeas corpus is expansive enough" to encompass a *Franklin* proceeding as a remedy. (*Cook*, *supra*, 7 Cal.5th at p. 452.) That is because " ' "[I]t is well settled that the writ of *habeas corpus* does not afford an all-inclusive remedy available at all times as a matter of right. . . . '[T]he function of the writ is merely to determine the legality of the detention by an inquiry into the question of jurisdiction and the validity of the process upon its face, and whether anything has transpired since the process was issued to render it invalid.' " ' " (*Ibid.*) The court observed that the offender before it "is not seeking release. Nor does he challenge the jurisdiction of the court or the validity of the proceedings that led to his now final judgment and sentence." (*Id.* at p. 457.)[9] Accordingly, it is questionable

_____

[9] In *Cook*, the habeas corpus petition did not allege IAC; rather, it sought a *Franklin* proceeding after a final judgment. (*Cook*, *supra*, 7 Cal.5th at p. 452.) The court held resort to habeas corpus was "unnecessary" because "[i]n cases with final judgments,

13

whether an IAC claim remains a viable method by which an offender can obtain access to a *Franklin* proceeding where his or her counsel failed to request a *Franklin* proceeding. This reinforces the propriety of limiting the forfeiture doctrine in this context.

At appellant's sentencing hearing, his trial counsel submitted no sentencing memoranda, documents, or testimony relevant to a future youth offender parole hearing. Neither defense counsel, the prosecutor, nor the trial court mentioned the future youth offender parole hearing, or appeared to be aware that the sentencing hearing was the preferred time to place on the record evidence relevant to the youth offender parole hearing. Respondent admits "the presentence report did not contain any information regarding youthful characteristics or circumstances unique to appellant." Thus, the present case is distinguishable from those in which an adequate record of youth-related factors was actually created. (See *People v. Woods* (2018) 19 Cal.App.5th 1080, 1089 [the probation report contained *Franklin*-type information about the youth's characteristics and defense counsel expressly said he had nothing to add to it]; *People v. Cornejo* (2016) 3 Cal.App.5th 36, 69–70 [defendants actually made record regarding their "characteristics and circumstances at the time of the offense [that] will be available at a youth offender parole hearing to facilitate the Board of Parole Hearing's consideration as to whether or not to grant them release"].)

"We do not take lightly the additional expense [a *Franklin* remand] entails. But the issue will be whether a middle-aged man who has spent [nearly] a quarter-century in prison should be released. We think decisions like that should be as informed as possible." (*People v. Tran*, *supra*, 20 Cal.App.5th at p. 570.) Accordingly, we remand the matter to the trial court for the proceeding contemplated in *Franklin*.

---

[Penal Code] section 1203.01 gives the trial court authority to conduct an evidence preservation proceeding as envisioned in *Franklin*." (*Cook*, at p. 452.)

14

## DISPOSITION

The judgment is affirmed and the matter is remanded for the limited purpose of affording both parties the opportunity to make a record of information relevant to appellant's future youth offender parole hearing, as set forth in *Franklin*, *supra*, 63 Cal.4th 261.

_____

SIMONS, J.

We concur.

_____

JONES, P. J.

_____

BURNS, J.

(A152211)

16

Superior Court of Solano County, No. FCR311578, Hon. John Ellis, Judge.

Geoffrey M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Arthur P. Beever and William M. Kuimelis, Deputy Attorneys General, for Plaintiff and Respondent.