Filed 1/4/22  P. v. Crawford CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B309442 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A652896) |
| v. | |
| JAMES D. CRAWFORD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Judge.  Reversed with directions.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

James D. Crawford requested a trial court proceeding under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to supplement the trial court record of his commitment offenses with information relevant to any eventual youth offender parole hearing pursuant to *In re Cook* (2019) 7 Cal.5th 439 (*Cook*) and Penal Code section 1203.01.[1]  The trial court denied Crawford's motion after concluding that Crawford was not eligible for a youth offender parole hearing.

The record before us establishes Crawford's entitlement to a *Franklin* proceeding.  We will reverse the trial court's order and remand to the trial court with instructions that the trial court conduct a *Franklin* proceeding forthwith.

## BACKGROUND

In two incidents on December 29, 1988, Crawford, who was 22 years old at the time, murdered Charles Tillman and attempted to murder James Delancy, Kevin Adams, Lazon Jones, Dwayne Wall, and Reginald Mathis, robbed and attempted to murder Jijane Williams, and stole a car.  (*People v. Crawford* (Sept. 25, 1992, B056929) at pp. 2-5 [nonpub. opn.] (*Crawford I*).)

A jury convicted Crawford of second degree murder, six counts of attempted murder, one count of second degree robbery, and one count of grand theft auto.  (*Crawford I*, *supra*, B056929 at p. 6.)  The jury found true allegations that Crawford had personally used a firearm in committing most of the various offenses (all except for Mathis's attempted murder and the grand theft auto charge—the information did not make the allegation on those charges), that he inflicted great bodily injury on

---

[1] Further statutory references are to the Penal Code.

Tillman, Delancy, Jijane Williams, and Mathis, and that a principal was armed with a firearm when Crawford attempted to murder Wall, Adams, and Jones. The jury also found true allegations that Crawford had been convicted of a prior serious felony pursuant to section 667, subdivision (a) and that he had served a prior prison term for conviction of a violent felony within the five years before the commitment offenses under section 667.5, subdivision (b) as it existed then.

Based on what we can discern from the limited record before us on this appeal, it appears the trial court sentenced Crawford to 15 years to life plus five years on the murder count, life plus three years on each of two attempted murder counts, life plus five years on one attempted murder count, and life on each of the three remaining attempted murder counts (each life term with the possibility of parole), five years on the second degree robbery count, and added a five-year enhancement under section 667, subdivision (a), all to be served consecutively. On the People's motion, the trial court dismissed the section 667.5, subdivision (b) allegation, and did not sentence Crawford pursuant to that section. Crawford's total sentence was 15 years to life and six additional life terms with the possibility of parole plus 26 years, all counts to run consecutively.[2]

We affirmed Crawford's conviction on his direct appeal. (*Crawford I*, *supra*, B056929 at p. 17.)

In 2014, the Legislature enacted Senate Bill No. 260, which added section 3051 to the Penal Code. (Stats. 2013, ch. 312, § 4.)

---

[2] Crawford characterizes his sentence as "41 years to life, plus six life terms." The People characterize the sentence alternately as "six life terms plus 41 years" and "41 years to life plus six life terms."

3

"[S]ection 3051 . . . requires the Board [of Parole Hearings (BPH)] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a [youth] offender's incarceration . . ." with some exceptions. (*Franklin*, *supra*, 63 Cal.4th at p. 277.) When the Legislature added section 3051, it made eligible persons "convicted of a controlling offense that was committed before the person had attained 18 years of age . . . ." (Stats. 2013, ch. 312, § 4.) In 2015, the Legislature raised the age to 23, and then to 25 in 2017. (Stats. 2015, ch. 471, § 1; Stats. 2017, ch. 675, § 1; Stats. 2017, ch. 684, §§ 1.5, 3.)

On July 17, 2019, Crawford filed in this court a petition for writ of habeas corpus requesting a *Franklin* proceeding. We denied the petition "without prejudice to petitioner's filing a request in the superior court for such a proceeding, pursuant to Penal Code section 1203.01" citing *Cook*, *supra*, 7 Cal.5th 439. (*In re Crawford on Habeas Corpus* (July 24, 2019, B299113) [order denying petition for writ of habeas corpus].)

Crawford filed a motion in the trial court on August 25, 2020 styled as a "MOTION FOR FRANKLIN HEARING (Pen. Code, § 1203.01 and In Re Cook, No. S240153 (June 3, 2019))." The motion alleged that Crawford was 22 years old when he had committed his "controlling offense," as that term is defined by section 3051, provided the case number, and presented argument and authorities requesting a *Franklin* proceeding.

The trial court called the matter for hearing on September 22, 2020. The trial court's minute order from that date states that the case was "called for habeas corpus petition," and that "[t]he defendant's petition for a *Franklin* [proceeding] is denied for the following reasons: The petition came before this court on 4/22/19—it was denied because the defendant did not qualify."

4

Crawford filed a timely notice of appeal.

## DISCUSSION
### A. *Franklin* Proceeding

Crawford contends that the trial court erred when it denied his request for *Franklin* proceedings. Crawford also requests that we instruct the trial court to order the BPH to expedite or to order an additional interim youth offender parole hearing on remand. We agree that the trial court erred when it denied Crawford's request for *Franklin* proceedings and will reverse the trial court's order denying Crawford's motion. We will not, however, order either the trial court or the BPH to conduct Crawford's next youth offender parole hearing on an expedited basis.

"A youth offender parole hearing is a hearing by the [BPH] for the purpose of reviewing the parole suitability of any prisoner who was 25 years of age or younger [under the relevant circumstances] at the time of the controlling offense." (§ 3051, subd. (a)(1).) "An individual subject to [section 3051] shall meet with the [BPH] pursuant to subdivision (a) of Section 3041." (§ 3051, subd. (c).) Section 3041, subdivision (a)(1) provides that "[i]n the case of any inmate sentenced pursuant to any law [with an exception that does not apply here], the [BPH] shall meet with each inmate during the sixth year before the inmate's minimum eligible parole date for the purposes of reviewing and documenting the inmate's activities and conduct pertinent to parole eligibility. During this consultation, the [BPH] shall provide the inmate information about the parole hearing process, legal factors relevant to his or her suitability or unsuitability for parole, and individualized recommendations for the inmate regarding his or her work assignments, rehabilitative programs,

and institutional behavior.  Within 30 days following the consultation, the board shall issue its positive and negative findings and recommendations to the inmate in writing."

Section 3051 specifies that the BPH "shall conduct a youth offender parole hearing to consider release" and that "[t]he youth offender parole hearing to consider release shall provide for a meaningful opportunity to obtain release."  (§ 3051, subds. (d), (e).)  At a youth offender parole hearing, the BPH "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."  (§ 4801, subd. (c).)

"If parole is not granted, the [BPH] shall set the time for a subsequent youth offender parole hearing . . . ."  (§ 3051, subd. (g).)[3]

In *Franklin*, the California Supreme Court concluded that the statutes "contemplate that information regarding the [youth] offender's characteristics and circumstances at the time of the offense will be available at a youth offender parole hearing to facilitate the [BPH's] consideration.  For example, section 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.'  Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of the . . . offense rather than decades later when memories have

---

[3] Crawford's initial youth offender parole hearing was held on February 28, 2017.  He was denied parole and his next youth offender parole hearing was scheduled for February 29, 2024.

6

faded, records may have been lost or destroyed, or family or community members may have relocated or passed away. In addition, section 3051, subdivision (f)(1) provides that any 'psychological evaluations and risk assessment instruments' used by the [BPH] in assessing growth and maturity 'shall take into consideration . . . any subsequent growth and increased maturity of the individual.' Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender" closer in time to the offense. (*Franklin, supra*, 63 Cal.4th at pp. 283-284.) The court created a mechanism whereby a youth offender "may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the [youth] offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors. The goal of any such proceeding is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the [BPH], years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime" as a youth. (*Id.* at p. 284.)

In *Franklin*, the Supreme Court considered what procedures would be adequate to provide a youth offender with a "meaningful opportunity for release" under the youth offender parole hearing statute. (§ 3051, subd. (e); *Franklin, supra*, 63 Cal.4th at p. 282.) Based on the record before it, the Supreme Court concluded that "[i]t is not clear whether Franklin had

sufficient opportunity to put on the [trial court sentencing] record the kinds of information that sections 3051 and 4801 deem relevant at a youth offender parole hearing." (*Franklin*, at p. 284.) Based on the fact that it could not determine from the record whether Franklin had had that opportunity, the Supreme Court set forth the parameters of what has become known as a *Franklin* proceeding.

The first step for the *trial court* in a *Franklin* proceeding is to determine as an initial matter whether the defendant "was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing. [¶] If the trial court determines that [the defendant] did not have sufficient opportunity, then the court may receive submissions and, if appropriate, testimony pursuant to procedures set forth in section 1204 and rule 4.437 of the California Rules of Court, and subject to the rules of evidence. [The defendant] may place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing, and the prosecution likewise may put on the record any evidence that demonstrates the juvenile offender's culpability or cognitive maturity, or otherwise bears on the influence of youth-related factors." (*Franklin*, *supra*, 63 Cal.4th at p. 284.)

In *Cook*, the Supreme Court clarified that the appropriate procedural mechanism for a youth offender whose judgment is final to request a *Franklin* proceeding is "to file a motion in superior court under the original caption and case number, citing the authority of section 1203.01 and [the Supreme Court's opinion in *Cook*]. The motion should establish the inmate's entitlement to a youth offender parole hearing and indicate when

8

such hearing is anticipated to take place, or if one or more hearings have already occurred." (*Cook*, *supra*, 7 Cal.5th at p. 458.)

### 1. Eligibility

Crawford filed the document *Cook* instructs youth offenders whose judgments are final to file in order to invoke a *Franklin* proceeding. Although he filed the document without the assistance of counsel, Crawford's motion specifically invokes *Franklin*, cites section 1203.01, and cites "*In re Cook*, No. S240153 (June 3, 2019)." The motion was filed under Crawford's original caption and case number. And it states on its face that Crawford was 22 when he committed the "controlling offense" as that term is defined in section 3501, subdivision (a)(2)(B). The points and authorities are obviously a form, in which Crawford filled in blanks to provide information relevant to his case.

The only information that Crawford did not provide that *Cook* says "should" be provided is dates of past and future youth offender parole hearings. That information has no bearing on Crawford's eligibility for a youth offender parole hearing under section 3051. And there is no indication in the record why Crawford would be *ineligible*. To be clear, it appears from the record that the trial court believed it was ruling on a petition for writ of habeas corpus. It was not. And the entirety of the trial court's order is "[t]he defendant's petition for a *Franklin* [proceeding] is denied for the following reasons: The petition came before this court on 4/22/19—it was denied because the defendant did not qualify."[4]

---

[4] We cannot discern from the record why the trial court believed Crawford "did not qualify" either for a *Franklin* proceeding or a youth offender parole hearing. But we *can*

9

The youth parole offender hearing statute makes ineligible "those who are sentenced under the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12) or Jessica's Law (§ 667.61), those who are sentenced to life without parole, and those who commit another crime 'subsequent to attaining [26] years of age . . . for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.'"[5] (*Franklin, supra*, 63 Cal.4th at pp. 277-278; § 3051, subd. (h); see Stats. 2017, ch. 675, § 1; Stats. 2017, ch. 684, §§ 1.5, 3 [changing the age after which malice aforethought crimes are disqualifying from 23 to 26].) Nothing in the record suggests that Crawford is ineligible for any of these reasons.

Crawford has demonstrated his eligibility for a youth offender parole hearing and has complied with the requirements the Supreme Court set forth in *Cook* to secure a *Franklin* proceeding.

### 2. Prejudice

The People contend that it is relevant that Crawford has already had a youth offender parole hearing and that the trial court did not err when it denied Crawford's motion because Crawford has not demonstrated that "the youthful offender

---

determine from the record that the matter was not before the trial court on a petition for writ of habeas corpus, and Crawford's motion was not heard on April 22, 2019, but rather September 22, 2020.

[5] The People suggest in a footnote that Crawford's five-year sentence enhancement under section 667, subdivision (a) is an alternate basis for affirming the trial court's order. We disagree with the People's assertion. Section 667, subdivision (a) is not included in the list of sentencing statutes precluding eligibility for youth offender parole hearings. (§ 3051, subd. (h).)

parole hearing he received was inadequate under *Franklin or Cook*."  The People argue that where a youth offender has had a *prior* youth offender parole hearing at which the youth offender was represented by counsel, that the youth offender is disqualified from a *Franklin* proceeding absent a further demonstration that the proceeding was inadequate.  The People attempt to couple a prior youth offender parole hearing with a requirement that a youth offender demonstrate that "he was somehow precluded from presenting evidence in that parole proceeding that would have addressed the potential age-based mitigating factors identified in *Franklin* and *Cook*."

Based on the People's contention, after argument in this matter we requested supplemental briefing to determine whether our review was subject to a prejudicial error analysis and, if so, whether Crawford had demonstrated that any error was prejudicial.  As we explain below, we conclude that it is the lack of the *opportunity to develop the record in the first instance* that is prejudicial to youth offenders who otherwise qualify for *Franklin* proceedings.[6]

Youth offender parole hearings and *Franklin* proceedings are inextricably intertwined; *Franklin* proceedings exist as a function of the enactment of the youth offender parole hearing statute.  But the two are not the same.  Youth offender parole hearings are, as the name denotes, hearings before the BPH. *Franklin* proceedings take place in and invoke the rules and authority of the superior courts.  That distinction is critical.

---

[6] We need not and do not consider here whether a prior *Franklin* proceeding bars successive requests for *Franklin* proceedings.  The record on this appeal does not present that question.

The youth offender parole hearing statute, tracking language from the United States Supreme Court in *Graham v. Florida* (2010) 560 U.S. 48, 75, requires that a youth offender parole hearing must provide "a meaningful opportunity to obtain release." (§ 3051, subd. (e); see *Franklin, supra*, 63 Cal.4th at p. 283.) To satisfy that requirement, *Franklin* instructs that a defendant must have a "sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing." (*Franklin*, at p. 284.) The procedural differences between trial court proceedings invoked by a motion under section 1203.1 and what happens during the youth offender parole hearing process define whether a defendant has any opportunity—let alone a "sufficient" opportunity—to make a record of the relevant information where sentencing occurred long before the constitutional vindications the youth offender parole hearing statute was meant to provide.

"At least 10 days before any [BPH hearing], the inmate shall be permitted to review the file which will be examined by the board and shall have the opportunity to enter a written response to any material contained in the file." (§ 3041.5, subd. (a)(1).) At the hearing, the inmate "shall be permitted to be present, to ask and answer questions, and to speak on his or her own behalf." (§ 3041.5, subd. (a)(2).) But it appears that an inmate has neither the right nor the opportunity to call witnesses to testify on his or her behalf, nor the authority to compel testimony or documents. Indeed, the list of people who are to be invited to attend and who may appear at parole hearings is limited by statute, and the inmate's right to ask questions does not even extend to all of those who choose to appear at the hearing. (*Ibid*.)

12

By contrast, defendants who invoke *Franklin* by filing a motion under *Cook* and section 1203.1 are able to invoke the procedures and authority of the superior court. (*Franklin*, *supra*, 63 Cal.4th at p. 284.) Subject to the trial court's determination— as the first step of a *Franklin* proceeding—that a defendant has not had sufficient opportunity to develop the record called for by the youth offender parole hearing statute, that authority includes the power to subpoena witnesses and documents, to have evidence presented by "the testimony of witnesses examined in open court," the exercise of the trial court's oversight and discretion, and the rights to investigators and experts necessary to create that record. (§ 1204; *Franklin*, at p. 284; *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319.)

The distinctions between procedures and law governing parole hearings and the procedures and law governing *Franklin* proceedings are substantial. *Franklin*, *Cook*, and their progeny do not guarantee any outcome or the existence of any particular evidence as a result of a *Franklin* proceeding, but they do guarantee that the defendant will have an "*adequate opportunity*" in the first instance "to make a record of information that will be relevant to the [BPH] as it fulfills its statutory obligations under sections 3051 and 4801." (*Franklin, supra*, 63 Cal.4th at pp. 286-287, italics added.)

As our colleagues from Division 3 of the Fourth District recently observed, even where a *Franklin* motion does not describe the specific evidence a defendant seeks to introduce, no authority "mandate[s] such information. And requiring a defendant to do so would subvert the 'simple pleading mechanism'" the Supreme Court created in *Cook*. (*People v. Howard* (Dec. 22, 2021, G059213) ___ Cal.App.5th ___, ___.) That

same division has explained that requiring a defendant to provide that information would "put[] the cart before the horse. We suspect it will take a considerable amount of time and effort for appellant and his attorney to prepare for a *Franklin* [proceeding]. At a minimum, they will have to gather records, letters and other information on appellant's behalf and look into the prospect of psychological testing and a risk assessment analysis. Not knowing what their investigative efforts might turn up, *it would be unrealistic to expect them to make an offer of proof at this state of the case."* (*People v. Tran* (2018) 20 Cal.App.5th 561, 570, italics added.)

We conclude that the denial of the *opportunity* afforded by *Franklin* is prejudice sufficient to warrant reversal of the trial court's order.

## B. Expedited Parole Hearing

Citing no authority for the proposition, Crawford also asserts that he is entitled to have his next youth offender parole hearing advanced. We disagree.

Crawford's next youth offender parole hearing appears to be scheduled for February 29, 2024. Scheduling of youth offender parole hearings is statutory, and there has been no argument either in the trial court or here that the BPH erred or violated the statutory framework for scheduling Crawford's parole hearing when it set the date for his next hearing. (See §§ 3051, subd. (g), 3041.5, subd. (b)(3)(C).)

Besides the statutory nature of parole hearing scheduling, Crawford asks us to decide an issue that was neither raised nor briefed at any point before this appeal—on an issue that we do not view as necessarily related to the scheduling of Crawford's next parole hearing. We decline to order the trial court or the

14

BPH to modify the schedule it has already established for Crawford's next youth offender parole hearing.

## DISPOSITION

The trial court's order is reversed. On remand, the trial court will conduct in this matter a proceeding pursuant to *Franklin, supra*, 63 Cal.4th 261 as soon as possible.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.